18    52
158   244

# White *versus* Miller.

1. Lumber and window sash were furnished to a contractor, to be used in the erection of a building. The lumber was delivered on the ground on which the building was erecting, and the sash was taken from the possession of the material men, by the contractor, to a shop, to be painted; the lumber and sash were subsequently sold on an execution against *the contractor*. It was *Held*, that as both the lumber and sash were furnished *on the credit of the building, though not used therein*, they were the subject of a lien against the building.

2. Being furnished on the credit of the building, they were the property of *the owner of the building*, and were not liable to sale by execution as the pro-perty of *the contractor*.

ERROR to the District Court of *Allegheny county*.

This was a claim under the Mechanics' Lien law, by John White, John Owen, and John Ross, partners, doing business under

[White *v.* Miller.]

the firm of White, Owen, & Ross *v.* William L. Miller, owner, and James McCracken, contractor.

July 20th, 1849, it was agreed between the parties to the proceeding, that the case be stated for the opinion of the Court in the nature of a special verdict.

White, Owen, & Ross, the plaintiffs, furnished lumber, &c., to James McCracken, the contractor, to be used in the erection of the house of Wm. L. Miller, against which the lien in this case is filed, to the amount or value of $109.57, which, with interest thereon from the first of May, 1848, they claim to recover in this suit. A portion of this lumber, to wit: 2620 feet of boards, of the value of $53.30, was levied and sold on an execution against the contractor after it was delivered *on the ground on which the house is erected*, and before it was worked into the house. Another portion, to wit, twelve dozens of nine-by-twelve window-sash, of the value of $9, was taken *by the contractor from the mill of the plaintiffs, to some shop for the purpose of having it painted*, but were never taken to the lot on which the house is erected, nor used in the same. The lien in this case was filed within the time required by law. If the Court should be of opinion that the plaintiffs are entitled to recover the whole of their bill, then judgment to be entered for them for the amount of their claim; but if the Court should be of opinion that the plaintiffs are not entitled to recover the value of *the boards* that were not *actually used* in the erection of said house before they were sold as the property of the contractor, nor entitled to recover the value of the window-sash which were delivered to the contractor, but never taken to the premises, then judgment to be entered for the plaintiffs, with such deduction or abatement as the Court shall think right. The costs to follow the judgment, and either party reserving the right to sue out a writ of error.

LOWRIE, J., directed judgment to be entered for but part of the claim, viz., $47.27; interest to be added from 1st May, 1849.

It was assigned for error, that the Court erred in not entering judgment for the plaintiffs *for the whole amount* of their claim in the case stated.

*Flanegin*, for plaintiffs in error; *Williams* and *Kuhn*, for defendants. See 16 *Ser. & R.* 56, Elliott *v.* Hills.

The opinion of the Court was delivered, September 23, 1851, by GIBSON, C. J.—As soon as owners of lots ceased to be their own builders, they put it in the power of the persons employed by them to occasion losses to mechanics and material-men which they ought not to bear; and it was to remedy this mischief that the

[White *v.* Miller.]

legislature established the principle that materials and labour are to be considered as having been furnished on the credit of the building, and not of the contractor. The principle is not only a just but a convenient one. Whether the builder be the agent of the owner or an independent contractor, his appointment to the job creates a confidence in him which was not had before; and the consequences of a false confidence ought not to be borne by those who had no hand in occasioning it. Nor does the rule of the legislature bear hard on the owner. He has it in his power to detain the price of the building while there are outstanding charges against it, or to stipulate for security against those that might afterwards turn up; and if he use common prudence, any loss which occurs will eventually fall on the author of it. If he do not, he cannot charge the mechanic or material-man with the consequences of his own *supineness.* The adaptation of these lien laws was imperfect, and they worked ill for the owner at first; but, amended and expounded by experience, they work justly and well for all parties. If, then, the lumber was furnished on the credit of the building, and not of the contractor, it is not easy to understand how it could be *seized* and sold by his creditors. The title to it was vested, by the delivery, not in him, but in the proprietor of the building, subject only to the revendication of the seller. The ownership of it between the time of delivery and of working it into the building, could not be in the contractor, because it was delivered to him, not on his own credit, but on the credit of the building to which it was destined. It was sold for the building, and, consequently, to the owner of it. He had power to protect it from the contractor's creditors, and he cannot charge his inactivity to the material-man, who had nothing to do with it. The ownership had passed by the delivery, and the building had become debtor for the price. The application of the lumber to the building was to be seen to by the owner of both. There doubtless may be collusion between the material-man and the contractor in furnishing too much; but the excess would not belong to the contractor, unless he had paid for it or secured the owner of the building against the price of it. The contractor might embezzle it while the building was in progress; but it is the business of the owner of the building to look to that. It would require proof of collusion to discharge the lien; and the difficulty of making it in particular circumstances is not a reason to dispense with the principle established in Wallace *v.* Melchoir, Hinchman *v.* Graham, and Harker *v.* Conrad.

Judgment for the plaintiff for $109.57, with interest from 1st May, 1848.