[Civ. No. 889.   Third Appellate District.—February 29, 1912.]

L. QUARTAROLI, CHARLES DAL POGGETTO, J. FO-
CHETTI and N. J. HEGGIE, as Administrator of the
Estate of C. AGUILLON, Deceased, Appellants, v. CITY
OF SONOMA and JAMES B. NEWMAN, Respondents.

BUILDING CONTRACT WITH CITY—ABANDONMENT—MATERIALS LEFT ON
GROUND—CITY'S OWNERSHIP—ABSENCE OF LIEN—INVALID TRANS-
FER BY CONTRACTOR.—Where a contractor, under a valid building
contract with a city, after part performance thereof, abandoned the
contract, leaving materials on the ground acquired for use in the
building, the city, as owner of the building, becomes the owner of
such materials, under section 1200 of the Code of Civil Procedure,
and is entitled to use the same in completing the building accord-
ing to the contract; and the fact that the building is not subject to
any lien cannot affect the city's rights to such materials, nor can its
rights be defeated by any attempt of the contractor to transfer the
same absolutely, or by way of securing his creditors.

ID.—ABANDONMENT OF MATERIALS BY CONTRACTOR—USE IN BUILDING—
ACTION FOR VALUE BY ASSIGNEES NOT TENABLE.—The contractor's
abandonment of the contract was in legal effect as much the abandon-
ment of the materials delivered and on the ground, as of the mate-
rials which had gone into the building, and all of the materials are
to be treated alike as the property of the owner. After they have
been used in the building in completion of the contract, the con-
tractor certainly could not maintain any action for the value of the
materials left on the ground, neither could his assignees be accorded
any stronger position.

APPEAL from a judgment of the Superior Court of
Sonoma County, and from an order denying a new trial.
Thos. Denny, Judge.

The facts are stated in the opinion of the court.

James C. Sims, and James W. Oates, for Appellants.

Robert A. Poppe, and A. B. Ware, for City of Sonoma,
Respondent.

William F. Cowan, for James B. Newman, Respondent.

CHIPMAN, P. J.—Plaintiffs bring the action to recover the possession of certain personal property or the value thereof, in case delivery cannot be had, alleged to be $3,590.85. They claim ownership by virtue of a bill of sale from one John T. MacQuiddy, of date September 13, 1906. MacQuiddy had entered into a written contract with defendant, the city of Sonoma, to construct a municipal building for that city, agreeing to furnish all materials and labor therefor at the agreed price of $15,475. This contract was duly authorized and legally entered into and was duly recorded. No question arises as to full compliance with the provisions of the statute relating to the making and recording of such contracts. At the same time MacQuiddy executed a bond with said city, "in the sum of $4,000"; on which plaintiffs, including defendant Heggie's intestate, were sureties, which recited the making of said contract and was conditional upon its faithful performance by MacQuiddy, and that he "shall make full payment to all persons supplying him labor or materials in the prosecution of the work provided for in said contract." This bond was also recorded at the same time and with the contract. MacQuiddy entered upon the work and prosecuted it up to September 8, 1906, on which day, as found by the court, "work ceased upon said building or the construction thereof and was wholly abandoned, and the said John T. MacQuiddy ceased to do any work upon said building from the eighth day of September, 1906, and said cessation from work and the finishing of said construction and the abandonment of said work and said contract by said MacQuiddy on said unfinished building continued for more than forty days after said cessation of work by said contractor MacQuiddy, and that at the time of the abandonment of said contract by said contractor MacQuiddy the articles of personal property and the materials mentioned in the answer of said city of Sonoma, which were materials necessary for the construction of said building, were then actually delivered and on the ground where said building was to be constructed, and that the same and all thereof were necessary materials for the construction of said building, and were actually delivered and on the ground where the same were to be used in the construction of said building, and that all of the aforesaid personal property was used and placed in the said building by defendant Newman at the instance of the

13 Cal. App.—26

said city of Sonoma long prior to the commencement of this action.''

It appeared, and was so found by the court, that after Mac-Quiddy ceased work the city called upon him to resume work, which he neglected and refused to do, and on September 13, 1906, he made the bill of sale to plaintiffs, on which they rely. The court found further as follows: "That said John T. Mac-Quiddy entirely failed to complete said contract or to perform the conditions and covenants and agreements therein set forth, and that by reason of said default and failure to carry out said contract, said defendant city of Sonoma was compelled to and did, after proceedings had to that end, let to the highest bidder, to wit, to defendant, James B. Newman, and entered into a written contract with him for the completion of said building in all respects as it was to be completed under the original contract to and with the said MacQuiddy, and the said James B. Newman and the said city of Sonoma entered into a contract for the completion of said building in and at the price of $14,200 . . . ; and that prior to the entering into said contract with said Newman and subsequent to the failure and abandonment of the said MacQuiddy to perform his said contract, the said materials and articles of personal property, being then and there actually delivered and were upon the ground where said building was to be constructed, the said city of Sonoma caused to be estimated, inventoried and listed, the said articles of personal property as nearly as possible by the standard of the whole contract price entered into by the said MacQuiddy with said city, and that the said materials and all thereof were delivered to the said James B. Newman by the said city of Sonoma for the completion and construction of said building and the carrying out of the said contract with the said Newman, and that said James B. Newman was furnished the said materials set forth in the separate answer of the said city of Sonoma by the said city, and that the same were placed in and used by him in the construction and completion of said municipal building.'' The court also found: "That the said city of Sonoma has paid out and expended the sum of $15,200 in cash for the carrying out the completion of the building entered into by the said MacQuiddy and abandoned by him, and for the carrying out and completion of the contract as entered into by the

said defendant James B. Newman for the completion of the
building, which was completed in all respects in accordance
with the original contract, and that all of the materials and
articles of personal property in controversy herein and herein
sued for was actually used and necessarily used in the com-
pletion of the said municipal building, and that its value is
hereby fixed at the sum of $3,590.85, and that if the city of
Sonoma is or should be compelled to pay therefor the said sum
of $3,590.85 to the plaintiffs, then and in that case the said
city of Sonoma would lose and be damaged in the sum of the
value thereof, to wit, $3,590.85, and that no part of the said
sum has been paid to the said city of Sonoma, and that the
bondsmen who executed the bond herein referred to and who
are the plaintiffs in this action (with the exception of the
said C. Aguillon, whose administrator is a plaintiff herein),
would be liable to the said city for the said sum. That the
said bond is a valid and legal bond, and indemnified, to the
extent of $4,000, the said city of Sonoma from all damages
which the defendant city of Sonoma should sustain by reason
of the failure or abandonment of the said MacQuiddy to per-
form his said contract. That there is in the treasury in the
city of Sonoma the sum of $275 properly applicable to the
payment of the plaintiffs' claim for damages or from any
cause arising out of the use of the said property by the said
city and the said materials and articles of personal property
which were used in the construction and completion of said
building, and that there is no other money or funds applicable
to the payment of the claim or demand of the plaintiffs herein
sued upon, and that there will not be in the treasury of the
said city any greater or other amount than the said sum of
$275 in the general fund of the said city properly applicable
to the payment of the said claim. That the plaintiffs are
bound by their bond for any loss occasioned to the city of
Sonoma by reason of the said abandonment of the said con-
tract and the said contract entered into by the said city with
the said MacQuiddy to the extent of $4,000, and that the
building was only completed at and for the sum of $15,200
after using all of the said materials and personal property
involved in this action in the construction and completion of
said building, and that the plaintiffs are estopped from re-

covering any other or further amount than the said sum of $275.''

It appears that defendant Newman's contract gave him the right to use the materials in question ''free of cost to him and to be used in the construction of said building.''

Upon the alleged sale to plaintiffs the court found as follows: ''That on September 13, 1906, and while the said materials were upon the said plaza and grounds upon which the said municipal building was to be erected, and was thereafter erected, the said John T. MacQuiddy made a bill of sale to the said Quartaroli, Dal Poggetto, J. Fochetti and C. Aguillon, and that said bill of sale was given to them to secure them as the bondsmen of the said John T. MacQuiddy in the said sum of $4,000, and to secure them on account of other obligations that they had entered into for and on behalf of the said John T. MacQuiddy. That at the time of making the bill of sale, the said parties to whom the same was made placed a man in charge of the materials and covered it with a canvass to protect it from the elements; that the defendant city of Sonoma made an inventory and estimate of the material before it was used in the construction of the said building and knew of the claim of the said parties to whom the said bill of sale was made; that defendant Newman completed the contract and the building was accepted by the city and he received $14,200 from the city; that while John T. MacQuiddy was working upon the said building he received from the city for material and labor on said building the sum of $1,000.''

The evidence was that MacQuiddy, on September 13th, pointed out to plaintiffs the material in question, and they put a canvass over part of it and for a couple of days a man had charge of it. But it was not moved from the plaza nor taken possession of otherwise by plaintiffs. The court further found that ''at no time prior to the commencement of this action or at any time did plaintiffs demand'' of either of the defendants ''the possession or return of said property''; that, prior to the commencement of this action, plaintiffs had knowledge of the letting of said contract to Newman, and that all of said materials had been used in the completion of said building as originally contracted for by said MacQuiddy, ''and the said defendant Newman in submitting his bid and in entering into said contract for the completion of said building did

so upon the consideration and express understanding that
the said materials described in the answer of said defendant
city were to be used by him in the completion of said building
and without cost or expense to the said Newman, all of which
was well known by the plaintiffs herein and their predecessors
in interest, and the said plaintiffs did not at any time notify
said defendant Newman that they claimed the said property
or were the owners of said property, or that the same had
been assigned to them by said MacQuiddy until after the com-
pletion of said building, but, on the contrary, the said plain-
tiffs and their predecessors in interest, having full knowledge
that the city of Sonoma claimed the said personal property as
its own, and that the said Newman intended to use the same
in the completion of the building, permitted the said Newman
to expend large sums of money in using the said property in
the said building without objection and without any claim
or notice that the said plaintiffs were the owners of the said
personal property by assignment from said MacQuiddy, or
otherwise, and by reason thereof the said plaintiffs are es-
topped from recovering from the said Newman for the value
of any of said property."

As conclusions of law the court found that plaintiffs are
entitled to judgment "against the city of Sonoma only for
the sum of $275, and that they are not entitled to their costs,
nor is the city of Sonoma entitled to its costs," and, as to the
defendant Newman, that plaintiffs are entitled to recover
nothing and that defendant Newman recover his costs.

Judgment passed accordingly, from which and from the
order denying their motion for a new trial plaintiffs appeal.

The findings indicate the character of the answer, which is
quite lengthy and need not be set out. It denied plaintiffs'
ownership or right of possession; set up MacQuiddy's con-
tract and bond and breach thereof; that the city was com-
pelled to complete the building and make the contract to that
end referred to in the findings; that plaintiffs were estopped
by their conduct; that defendants were entitled to set off or
counterclaim plaintiffs' demand by reason of their bond given
to the city and generally pleaded the issues to which the find-
ings respond.

Respondents urge the point that the bond given by the con-
tractor on which the plaintiffs here were sureties is in itself

a complete answer to the claim of plaintiffs, as it exceeded in amount their claim; that this bond falls under the rule in *Union Sheet Metal Works* v. *Dodge*, 129 Cal. 393, [62 Pac. 41], and other cases, because it was a voluntary obligation and not entered into pursuant to section 1203, Code of Civil Procedure, and therefore was not void, as was held in cases such as *Shaughnessy* v. *American Sur. Co.*, 138 Cal. 533, [69 Pac. 250, 71 Pac. 701], and *Montague etc.* v. *Furness,* 145 Cal. 205, [78 Pac. 640], where it appeared affirmatively that the bond was given under the command of section 1203.

It is also strongly urged that plaintiffs are estopped to recover because they knew, at the time he attempted to convey the property to them, that MacQuiddy had abandoned his contract and quit work, leaving the material in question in plaintiffs' possession where it had been delivered to be used in the construction of the building; that they knew the city had advertised for new bidders and that this property was to be considered in the bids as subject to be used by the successful bidder, and with this knowledge and the further knowledge that it was so used, they made no demand for its delivery to them and made no objection to its use in the building or forbade its use.

Respondents also claim that the entire building fund, with the exception of $275, was exhausted in the payments made to defendant Newman, under his contract, and that there are no longer any funds in the treasury out of which plaintiffs' claim could be paid.

Respondents also claim that the evidence showed that the transfer by MacQuiddy of his interest in the property was by way of security and was not consummated by delivery and was ineffectual as a sale.

In some of these contentions there is much force, but we do not find it necessary to enter upon their discussion or decide the questions thus presented. It seems to us that section 1200, Code of Civil Procedure, conclusively establishes the right of the city, on the abandonment of the contract by MacQuiddy, to treat as its own the materials formerly belonging to him which were then on the ground in the city's possession, delivered there for the purpose of being used and which were used in the construction of the building, and that he had no right to defeat such ownership of the city or its right to use the ma-

.terials for the purposes for which they were intended, by the attempted transfer to his .creditors either absolutely or as security. The section is as follows:

"In case the contractor shall fail to perform his contract in full, or shall abandon the same before completion, the portion of the contract price applicable to the liens of other persons than the contractor shall be fixed as follows: From the value of the work and materials already done and furnished at the time of such failure or abandonment, including materials then actually delivered or on the ground, which shall thereupon belong to the owner, estimated as near as may be by the standard of the whole contract price, shall be deducted the payments then due and actually paid, according to the terms of the contract and the provisions of sections one thousand one hundred and eighty-three and one thousand one hundred and eighty-four, and the remainder shall be deemed the portion of the contract price applicable to such liens."

The section has received construction many times where the contractor had abandoned his contract and the rights of materialmen were involved. (*McDonald* v. *Hayes*, 132 Cal. 490, 495, [64 Pac. 850]; *Hoffman-Marks Co.* v. *Spires*, 154 Cal. 111, 114, [79 Pac. 152]; *McClure* v. *Jackman*, 7 Cal. App. 703, [95 Pac. 673]; *Duffy Lumber Co.* v. *Stanton*, 9 Cal. App. 38, [98 Pac. 38].) We find no case in our reports where the precise question here involved has arisen. It is this: When a contractor abandons his contract and quits work on the building, leaving materials on the premises in possession of the owner of the building which the contractor has purchased and placed there to be used in the construction of the building, can he sell these materials or transfer them to creditors as security for his indebtedness to them, thus defeating the owner of all right thereto?

It is urged by appellants that, inasmuch as under the decisions (*Mayrhofer* v. *Board of Education*, 89 Cal. 110, [23 Am. St. Rep. 451, 26 Pac. 646], and others) the building could not be made the subject of a lien, the section has no just application here. Also, by its terms it concerns only the persons who may claim liens and does not concern the owner except as to such liens. It is true it protects persons entitled to liens in certain cases, but it specifically provides that, upon the abandonment of the work by the contractor, the "materials

then actually delivered or on the ground, *which shall belong to the owner,*" shall be deducted, etc.

An examination of the statute shows that the work and materials already done and furnished, including the materials then actually delivered and on the ground, shall, upon the abandonment of the work, belong to the owner, subject to such rights as are given to laborers and materialmen. The materials on hand are declared to belong to the owner, who may use them in the completion of the building, at their value, ascertained by the rule prescribed in the statute. The materials here were purchased by the contractor and were delivered on the ground to be placed in the building pursuant to his contract, and remained in the owner's possession after the contractor abandoned his contract and prior to any attempted transfer thereof. His abandonment was as much the abandonment of the materials delivered and on the ground as of the materials which had gone into the building. By the same token all the materials referred to in the statute are treated alike.

It is true that, where there are liens of materialmen capable of enforcement, the statute gives them certain rights, after the owner is fully protected, but whether there are enforceable liens or not, the fact does not take from the owner the rights given him. He finds himself with an uncompleted contract and with certain materials left on his hands by the defaulting contractor. His right to complete the building at the cost of the contractor is undoubted, and he certainly should have the right to lessen the cost to himself by using the materials which the statute says belong to him. Otherwise, the statute has little meaning for him.

In the case of *White* v. *Miller,* 18 Pa. 52, the controversy arose between an execution creditor who had sold on an execution against the contractor certain lumber after it was delivered on the ground on which the house was being erected and before it was worked into the house. In sustaining the lien as against the owner the court took the view that the delivery of the lumber was on the credit of the building and not of the contractor; that the title to it was vested, by the delivery, not in him, but in the proprietor of the building, "subject only to the revendication of the seller." "The ownership of it," said Gibson, C. J., who delivered the opinion, "between the time

of delivery and of working it into the building, could not be in the contractor, because it was delivered to him, not on his own credit, but on the credit of the building to which it was destined. It was sold for the building and, consequently, to the owner of it.'' What the statute was in Pennsylvania at that time does not appear. It is to be inferred from the opinion that the principle on which the decision rests was invoked for the protection of materialmen and as ''not only a just but a convenient one.'' Here, however, we have a statute making the owner of the building the owner of the materials delivered and on the ground at the time the contractor has abandoned his contract. There are no lien claimants; the question is one solely between the owner and the contractor. Every consideration of justice and fair dealing would seem to support the view we have taken of the statute. Appellants' contention apparently is that the bond is void and, in effect, that the owner is powerless to protect himself by a bond; that the contractor had the right to abandon his contract and turn over the materials delivered and on hand to whom he pleased, casting upon the owner the burden of completing the building at his own cost, which the contractor, confessedly, is unable to do and who may be insolvent. If the controversy were between the contractor and the owner for the value of this property, used, as it was, in the completion of the building and in the carrying out of the contractor's obligations, no court would entertain the contractor's claim, and we cannot see that his assignees should be accorded any stronger position.

The case of *Steiger* v. *City of Sonoma*, 9 Cal. App. 698, [100 Pac. 714], relied on by appellants, is not in point. There no delivery of the property had been made to the contractor and title had not passed to him, and for that reason it was held not to come within the provisions of section 1200, Code of Civil Procedure, but there, as in other cases, it was held that this section furnishes the rule for the disposition of materials belonging to the contractor, when he abandons his contract, which have been delivered and are on the ground where the building is to be erected.

It is only upon the theory that the contractor has abandoned all right to the materials and that the ownership thereafter is in the owner of the building, that any claim of lien is given

the mechanic and materialman. There is no reason why this relation of the owner to the property should change because there are no lienors or because the building happens not to be subject to a lien.

It will be observed that the owner of the building is given the right to deduct all payments "then due and actually paid, according to the terms of the contract," from the value of the work and materials that have gone into the building, "including materials then actually delivered or on the ground," and the remainder "shall be deemed the portion of the contract price applicable to such liens." In other words, the owner of the building is chargeable with the abandoned materials in an adjustment of the liens. Why, then, should the contractor have the right to do as he pleases with these materials when the statute deals with them as belonging to the owner of the building?

In the case of *Hoffman-Marks Co.* v. *Spires,* 154 Cal. 111, [97 Pac. 152], it was held that where a valid contract in writing for the erection of a building has been executed and filed, and the work thereunder has been abandoned by the contractor before completion, the amount of the contract price applicable to liens of persons other than the contractor is to be determined by section 1200, Code of Civil Procedure. Also, that if the payments made by the owner pursuant to the contract amounted, at the time of the abandonment, to more than the value of the work and materials then done and furnished, estimated by the standard of the whole contract price, no part of the contract price is applicable to the payment of liens, and lien claimants must look to their personal claim against the contractor, and this extends as well to the final reserved payment of the contract price. It was also held that in determining the value of work done and the materials furnished up to the time of abandonment, under section 1200, it is proper to consider not only the value of the work done and materials furnished at the time of the abandonment, but also of the work left undone and the materials yet to be furnished, i. e., the necessary cost of the completion of the contract. We can see no way by which this view of the statute can be realized except upon the assumption that not only the work and materials that have gone into the building, but also the mate-

.rials delivered and on hand for that purpose, shall belong to the owner of the building.

Whether the court was justified in awarding plaintiffs the $275 to the credit of this fund after the completion of the building is a matter of which appellants cannot complain.

It may be that some of the findings of the court on other defenses than the one we have considered are not supported. Still, if we are correct in our view of section 1200, the finding on the defense is sufficient to support the judgment, disregarding all others.

We discover no prejudicial error in the record, and hence the judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 29, 1912.