[No. 2,653.]

## LEOPOLD GROSS *v.* WILLIAM KIERSKI.

EXPRESS WARRANTY OF TITLE TO CHATTELS.—There is no breach of an express warranty of title to chattels sold until the vendee's possession is disturbed by the true owner.

IMPLIED WARRANTY OF TITLE TO CHATTELS.—When goods are in possession of the vendor, who, dealing with them as owner, sells and delivers

them to the purchaser, nothing being said as to the title, the law implies
that he warrants the title to the property sold.

LIMITATION OF ACTIONS.—The Statute of Limitations, upon an implied
warranty of title to chattels sold by one in possession, does not commence
running until the vendee is disturbed in his possession by the true owner.

APPEAL from the District Court of the Fifth Judicial District, San Joaquin County.

The facts are stated in the opinion of the Court.

*W. L. Dudley,* for the Appellant, argued that under the fourth subdivision of section seventeen of the Act concerning limitations, which provides that actions shall be commenced within two years " upon a contract, obligation, or liability not founded upon an instrument of writing," the Statute of Limitations commenced to run from the date of the sale and delivery of the chattel; and cited Chitty on Cont. 10th Am. ed. 920, 921; *Howard* v. *Young,* 5 B. & C. 259; *Bishop* v. *Little,* 3 Me. 371; Angell on Limitations, 5th ed. 191, 192; *Wilcox* v. *Plummer's Exr.,* 4 Pet. U. S. 172; Hilliard on Sales, 2d ed. 295.

*J. H. Budd,* and *Barna McKinne,* for Respondent.

In an action of breach of warranty, express or implied, in the sale of personal property, the Statute of Limitations begins to run against the plaintiff in the action from the time of the recovery of the property in an action against him by the real owner. (*Long* v. *Hickingbottom,* 28 Miss. Reps. 778, 789; *Case* v. *Hall* and *Van Elten,* 24 Wend. 103; *Vibbard* and *Abbott* v. *Johnson,* 19 John. 77; 1 John. 274, 517; Ang. Lims. 123, Note 1; id. 115, 116, 117; 2 Kent, 621, 632, *478, 11th Am. ed.)

By the Court, WALLACE, J.:

The defendant, a dealer in musical instruments, sold and delivered to the plaintiff a pianoforte, nothing being said

at the time concerning the title to the chattel. This was in February, 1867. In August, 1869, certain persons, claiming and ultimately showing themselves to be the owners of the chattel, commenced an action against Gross for its recovery. The latter thereupon gave notice to his vendor, the defendant, of the bringing of the action. In September following judgment passed against Gross. In October the pianoforte was taken from his possession, and in November, 1869, he brought the present action against Kierski for breach of the warranty of title to the chattel. The Court below gave judgment for the plaintiff, and to reverse that judgment this appeal is brought.

The vendor of goods and chattels in possession is held, by implication of law, to warrant the title. This rule was recognized by this Court in the case of *Miller* v. *Van Tassel*, 24 Cal. 458, and may be said to have become firmly ingrafted in the jurisprudence of this country, whatever may be the doubts at present surrounding it in England, as indicated in the recent cases of *Morley* v. *Attenborough*, 3 Welsby, Hurlstone & Gordon Exch. R. 507, and *Sims* v. *Marryat*, 17 Q. B. 290, where it was said by Lord CAMPBELL, C. J., that "on that point the law is not in a satisfactory state."

In the case at bar this general rule is not questioned by the defendant, but it is claimed that the action here was not brought within two years next after the breach of the warranty, and is therefore barred by the Statute of Limitations, which was pleaded below, and is insisted upon in this Court; and this presents the only question to be determined.

The statute undoubtedly commenced to run from the earliest time at which the plaintiff might have sued. This would, of course, be that period at which the breach must be considered to have happened. And this is the precise question upon which the parties are at issue here—the de-

fendant claiming that his warranty was broken in February, 1867, when he sold and delivered the chattel, and the plaintiff insisting that the breach did not occur until October, 1869, when the property was taken by the true owner.

In an action brought against the vendor of chattels upon an *express* warranty of title, the authorities are believed to be uniform upon the point that there is no breach in contemplation of law until the vendee's possession of the goods is in some way disturbed, by reason of the title of the true owner.

No substantial difference in this respect is perceived between an express warranty of title made by a vendor upon sale of chattels out of possession and the warranty of title implied by law upon a sale of goods in possession. The fact of the goods being out of the possession of the vendor may well be considered to put the vendee upon his guard, and it is his own folly if, under such circumstances, he will not protect himself by exacting an express agreement to warrant the title. The doctrine of *caveat emptor* would apply to such a case.

But when the goods are at the time in the possession of the vendor, who deals with them as owner, and under such circumstances sells and delivers them to the purchaser, the law will imply against the vendor that he warrants the title to the property sold. This implication is indulged for the protection of the purchaser against what would otherwise be the fraud of the vendor, practiced upon him when he is himself not chargeable with negligence; for it is unreasonable to exact of the purchaser of goods that he is in every case to institute an inquiry into the title of his merchant, upon pain of losing both the goods and their price. The purpose of the law in implying the warranty is the protection of the purchaser; it determines that the vendor did warrant the title to the goods, because it considers that, under the circumstances, he ought to have done so. It

declares that his silence shall be taken to be a warranty of the soundness of his title. The sale and delivery of the goods in possession, where nothing is said about the title, is, therefore, precisely equivalent to an express warranty of title, and, the facts being ascertained, the rights and liabilities of the parties are exactly the same.

It is true that the Court of Appeals of Kentucky hold that there is a distinction between an express warranty of title to chattels and the warranty of title implied by law. The express warranty is likened to a covenant to warrant and defend the title, when inserted in a deed of conveyance of lands, and is, therefore, said to be unbroken until an eviction by the true owner, under paramount title, has taken place. The implied warranty is, however, compared to a covenant of seizin, which is said to be broken, if at all, at the instant that it is entered into. As a consequence, it is the settled rule in that State that the Statute of Limitations upon breach of an express warranty of title to personal property commences to run from the time when the vendee is disturbed; while in case of implied warranty it is set in motion instantly upon the sale and delivery of the goods. (4 Bibb. 304; 2 Marsh. 217; 4 B. Monroe, 201; 1 Metc. Ky. R. 572.) For the distinction thus made I think that no good reason can be shown. Its operation would, in many instances, deprive the purchaser of the very protection which it is the purpose of the implication to afford. Nor is it clear that the analogy supposed to exist between the covenant of seizin and the implied warranty of chattels can be maintained. Mr. Rawle, in his treatise on the covenant of seizin (Rawle on Cov. 3d ed. 50), assumes that the implied warranty of title to chattels is understood to be "a title sufficient to retain the possession in the vendee of the chattels," and in illustration of the distinction between seizin in fact and seizin in law, as to real property, he says: "An analogy may be found in the rule with respect to chattels.

In the sale of these a warranty of title is implied by the civil and the common law. * * * Yet a subsequent loss of possession by title paramount will be a breach of this warranty, because the vendor is understood to have agreed lawfully to transfer a possession which can be retained," etc.

The doctrine of the Court of Appeals of Kentucky is believed to be unsupported either by text writers upon the law or the adjudications of the Courts of other States of the Union.

In *Word* v. *Cavin*, 1 Head, 507, the Supreme Court of Tennessee held that, upon breach of the implied warranty of title to chattels the Statute of Limitations commenced to run upon the possession of the chattel being lost, or upon voluntary offer by the vendee to restore it to the seller.

*Linton* v. *Porter*, 31 Ill. 107, was an action upon a promissory note given upon the purchase of a chattel with implied warranty of title. The Supreme Court of Illinois held that it was no defense to say that the vendor had no title while the possession of the vendee remained undisturbed by the true owner.

In *Case* v. *Hall*, 24 Wend. 102, upon a state of facts substantially similar to those in *Linton* v. *Porter*, the defense was overruled on the ground that where the vendee relies upon the warranty of title, express or implied, there must be a recovery by the real owner before an action can be maintained. (See, also, *Vibbard et als.* v. *Johnson*, 19 Johns. 77; Story on Sales, Sec. 203; Parsons Merc. Law, 2d ed. 50, and cases there cited in note; Hilliard on Sales, 3d ed. 391, and cases cited in note.)

It results from these views that the plaintiff's cause of action accrued upon the loss of the chattel in October, 1869, and the Statute of Limitations will not avail the defendant.

Judgment affirmed.

Mr. Justice Sprague expressed no opinion.