[Civ. No. 509.    Third Appellate District.—January 27, 1909.]

## STEIGER TERRA COTTA AND POTTERY WORKS, Appellant, v. CITY OF SONOMA and J. B. NEWMAN, Respondents.

BUILDING CONTRACT—MATERIALS TO BE USED BY FURNISHER IN CONSTRUCTION OF ROOF—ABANDONMENT OF CONTRACT—OWNERSHIP—CLAIM AND DELIVERY.—When, under a valid building contract with a city to construct a city hall, the contractor employed plaintiff to furnish all materials, and to construct a tile roof thereon, and after the materials therefor were placed upon the ground for the necessary work contracted for, the contractor abandoned his contract, and a new contract was let by the city, and the city claimed title to the materials, the ownership of such materials remained in the party furnishing the same, and after demand made by him upon the city and the new contractor for the possession of the same, before they were placed in the structure, and their refusal to grant the same, the owner is entitled to recover the possession of the materials or their value, in an action of claim and delivery against them.

ID.—CONSTRUCTION OF CODE—SECTION 1200 OF CODE OF CIVIL PROCEDURE INAPPLICABLE.—In such case the city cannot claim title to the materials so furnished under section 1200 of the Code of Civil Procedure, which only applies as against lien claimants for materials furnished for use by the contractor in the building, when the contract is abandoned, and has no application to materials, the title to which never passed to the contractor. The statute does not contemplate that the owner of the building may take property not belonging to the contractor.

ID.—NATURE OF CONTRACT—MATERIALS NOT SOLD—AFFIXING TO FREEHOLD.—The nature of the contract made was not one for the sale of materials to the contractor, but was in the nature of one to furnish materials and affix them to the freehold by work and labor, and until so affixed the property to the materials will not pass.

ID.—CHARGING MATERIALS TO CONTRACTOR NOT AFFECTING NATURE OF CONTRACT.—The mere circumstance that the materials placed on the ground under the contract made with the contractor were charged to him cannot affect the nature of the contract made, or the title to the materials furnished by the owner thereof to be affixed on the roof by his labor.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmett Seawell, Judge.

The facts are stated in the opinion of the court.

James W. Oates, Bishop & Hoefler, and Alfred J. Harwood, for Appellant.

Robert A. Poppe, and A. B. Ware, for Respondents.

CHIPMAN, P. J.—This is an action for the recovery of the possession of specific personal property or, if delivery cannot be had, for the value thereof.

The facts are not disputed so far as they concern the main question involved.

One MacQuiddy entered into a written contract with defendant, city of Sonoma, to erect a city hall. This contract was duly recorded and its validity is not questioned. MacQuiddy entered into a written contract with plaintiff whereby plaintiff agreed to "furnish and set on the roof of the New City Hall, . . . as per plans and specifications by architect, A. C. Lutgens, all of the Spanish 'S' Tile and finishings required, said material and work to be satisfactory to said architect." Plaintiff also agreed to "complete said work" within a time stated "after receipt of full sized detail drawings of said roof," and guaranteed "said roof against leakage caused by defects of workmanship or material for period of two years from and after completion of roof, . . . " and to "furnish said material and perform said work for the sum of $875.00." It was also agreed that said MacQuiddy will pay said sum "upon completion of the work on the roof of said building in accordance with the terms of" their contract, "$650.00 and the balance $225.00 in thirty-five days after said completion." The material was manufactured by plaintiff and remained in its possession until it was shipped to MacQuiddy under the contract and all expenses of shipping and delivering the ma-

terial to the plaza at Sonoma, the site of the proposed building, where it was stored to await use, were paid by plaintiff and the material was charged on plaintiff's books to MacQuiddy. It appeared also that nothing had been paid for the material by MacQuiddy or by any person for or on his behalf. Before the completion of the building MacQuiddy defaulted and abandoned the work, and defendant, the city of Sonoma, entered into a contract with defendant Newman to complete the building, took possession of the material in question, and caused its value to be appraised, proceeding under section 1200 of the Code of Civil Procedure, on the assumption that the material had become the property of defendant, city of Sonoma. Plaintiff demanded possession of the property, and, being refused, commenced this action, at which time no part of the material had been used in the construction of the building. Defendant, city of Sonoma, gave the statutory bond and the property was thereupon redelivered to said defendant. The cause was tried by the court without a jury and defendants had judgment, from which plaintiff appeals upon bill of exceptions.

Appellant relies upon the proposition that the contract between it and MacQuiddy is a contract for work and materials under which no title in the materials passed to MacQuiddy, and that this unmistakably appears from the terms of the contract itself. We think this is a sound interpretation of the instrument. Mr. Benjamin states the rule as follows: ''Where a contract is made for furnishing a machine or a movable thing of any kind and fixing it to the freehold, it is not a contract for the sale of goods. In such contract the intention is plainly not to make a sale of movables, but to make improvements on the real property, and the consideration to be paid to the workman is not for a transfer of chattels, but for work and labor done and materials furnished in adding something to the land.'' (Benjamin on Sales, 7th ed., sec. 108.) The English rule on the subject is clearly stated in *Tripp* v. *Armitage,* 4 Mees. & W. 687. In this case the contract was to make certain sash frames and attach them to a building. Baron Parke said: ''The contract is, that the bankrupt shall build a house; that he shall make, among other things, window-frames for the house, and fix them in the house, subject to the approbation of a surveyor; and it was never intended by this contract, that the articles so to be fixed should become the property of the defendants, until they were fixed to the freehold. It is said

that the approbation of the surveyor is sufficient to constitute an acceptance by the defendants; but that approbation is not given *eo animo* at all; it is only to ascertain that they are such materials as are suitable for the purpose; and notwithstanding that approval, it is only when they have been put up, and fixed to the house, in performance of the larger contract, that they are to be paid for." Lord Chief Baron Abinger, in giving his opinion, said: "This is not a contract for the sale of goods as movable chattels; it is a contract to make up materials and to fix them; and until they are fixed, by the nature of the contract, the property will not pass." It was suggested as illustrative of the principle, that had the sashes been destroyed by fire the loss would have fallen on the builder, for the owner of the building was not bound to pay for anything until put up and fixed. So here, plaintiff's undertaking was not only to furnish certain materials, but plaintiff was itself to perform the labor of placing them on the roof to become a part of the building and freehold; and plaintiff was not to be paid for the materials alone, but was to receive an entire sum for the combined labor and materials and that only after completion of the work. It is not possible to distinguish the two cases.

The principle was applied in *Chandler* v. *De Graff*, 22 Minn. 471. In that case the question was as to the title to certain railroad ties. Among other things, the court said: "They (the ties) were furnished not on account of any agreement for the purchase or sale of ties, but in part execution of defendant's promise to build and complete a certain line of railroad, and of such quality, and to such an extent only, as might be necessary to fulfill that specific obligation and complete the undertaking. The risk of loss was clearly defendant's until the road was inspected and accepted as provided in the contract. . . . No property nor title in the ties vested in the railroad company until after they had been actually placed in the track." The same principle was applied where certain contracts were entered into to furnish materials and construct a street railroad. (*Cameron* v. *Orleans & J. Ry. Co.*, 108 La. 83, [32 South. 208]; *Orleans & J. Ry. Co.* v. *International Construction Co.*, 108 La. 82, [32 South. 218].)

The learned judge who tried the case held that plaintiff's rights were limited to such as are found in section 1200, Code of Civil Procedure; that the contractor having abandoned his

contract and the work before the completion of the building, the portion of the contract price to which plaintiff was entitled was to be fixed by that section as follows: "From the value of the work and materials already done and furnished at the time of such failure or abandonment, including materials then actually delivered or on the ground, which shall thereupon belong to the owner, . . . shall be deducted the payments then due and actually paid, according to the terms of the contract and the provisions of sections 1183 and 1184, and the remainder shall be deemed the portion of the contract price applicable to such liens." (Code Civ. Proc., sec. 1200.) The trial judge held that because the contract of plaintiff and MacQuiddy shows that the materials were to be used in the new city hall, the plaintiff "by the terms and words of its contract brings itself directly within the provisions of the statute it seeks now to evade"; and in his ruling he added: "This was done doubtless to protect itself in the event of the material being used and MacQuiddy's failure, through insolvency or other causes, to comply with his contract." It may be said of this suggested motive, of which the record presents no proof, that appellant concedes that if the materials had been used as contemplated, had gone into the roof, the section of the code referred to would have applied, although in this particular case, plaintiff would not have been entitled to a lien, because the building is a governmental instrumentality, and plaintiff would have been compelled to look to the contractor, or to the owner for its proportionate share of the contract price for the building. But we have no such case here. Section 1200 and others on the subject relate exclusively to the liens of mechanics, laborers and materialmen and to the protection of the owner against lien claimants and the limitation of the owner's liability in his relation with the contractor and lien claimants. It does not purport nor does it attempt to define or interfere with the contractual relation between the contractor and his subcontractors until the subcontractor has brought himself within the provisions of the mechanic's lien law, by performing labor or by a sale and delivery to the contractor of the materials to be used in the building. Section 1200 refers to a case where the owner has made and recorded a valid contract with the contractor who abandons the building in an unfinished condition. The section contemplates its completion by the owner whose liability to lien claimants is limited by his

contract with the contractor.    The payments then (upon such abandonment) due, and actually paid, shall be deducted from the value of the work and materials already done and furnished, including materials actually delivered and on the ground, according to the terms of the contract and the provisions of sections 1183 and 1184, and the remainder becomes applicable to the liens provided for in said last-mentioned sections.    Materials actually delivered and on the ground are, for the purposes of this equitable adjustment, declared to "belong to the owner," but this declaration cannot be held to mean materials which have never been sold to the contractor and have never been delivered to the contractor to be by him used in the construction of the building, but which in fact belonged to some other person.    The case here is very different from the cases contemplated by and ordinarily arising under the mechanic's lien law, where materials have been sold to the contractor and actually delivered and on the ground. The seller parts with his property as in any other case of sale and delivery, and, but for the lien given the seller, as a materialman, he would have no recourse except against the contractor.    Nor can the fact that plaintiff charged the materials on its books to MacQuiddy affect the question, for their contractual relation was clearly defined by their written contract, and the evidence was that the materials were delivered under their contract.    Besides, defendants do not claim that a sale and delivery of the property were effected to MacQuiddy; they rely wholly upon the provisions of the statute referred to.

In *Los Angeles Pressed Brick Co.* v. *Higgins,* 8 Cal. App. 514, [97 Pac. 419], the court, in speaking of the constitutional provision and the lien law as we have it, said: "The statute is intended to supply the means for such enforcement, and will be construed with a view to accomplish the constitutional purpose. In so far as the act affects the right to contract, it will be limited in its operation to the persons whom the constitution and the statute were intended to protect by giving a lien, and to such contracts of these persons as relate to and affect the lien. In interpreting the mechanic's lien law it is not to be considered as a general law relating to contracts and contractual relations, but a means provided whereby a laborer, mechanic or materialman may declare his intention to exercise his constitutional right, and enforce his lien."    This was said in a case where the contract between the contractor and the owner was

not recorded, and was, therefore, void as to lien claimants. But we think it equally true where the contractor abandons his contract. In such case the statute deals only with the relation of lien claimants with the owner in respect of their rights as lien claimants and his liability to them as such. But it does not affect the contractual relations between the contractor and subcontractors who claim no lien. The statute does not contemplate that the owner of the building may take property not belonging to the contractor. *Golden Gate L. Co.* v. *Sahrbacher*, 105 Cal. 114, [38 Pac. 635], and *McDonald* v. *Hayes*, 132 Cal. 490, [64 Pac. 850], relied on by respondent, were cases of foreclosure of liens where the parties brought themselves within the statute and proceeded under it. These cases throw no light on the present question.

We do not deem it necessary to pass upon the constitutionality of section 1200 as applied by the trial court in this case. Appellant cites authorities to show that so applied it is taking property without due process of law. We think the section rightly interpreted and applied does not warrant the view taken by the learned trial judge, and that is sufficient for the purposes of the appeal.

The judgment is not in the alternative as is required in this form of action. (Code Civ. Proc., sec. 667.) Waiving this as an inadvertence, we think the judgment should be reversed for the foregoing reasons, and it is so ordered.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 25, 1909.