CARVER v. DENN.

No. 7374.  Decided January 31, 1950.  (214 P. 2d 118.)

See 55 C. J., Sales, sec. 721. Sales, trade name as negativing implied warranty when purchased not by name, but for special purpose, see note, 90 A. L. R. 410. See, also, 46 Am. Jur. 527.

*Robert B. Porter, Jr.,* Salt Lake City, *Robert B. Porter,* Salt Lake City, for appellant.

*Dan B. Shields,* Salt Lake City, for respondent.

LATIMER, Justice.

This action was brought by William G. Carver, doing business as Carver Sheet Metal Works, against W. T. Denn, doing business as Hubbard-Denn Jewelers, to recover the sum of $870.00 which amount represents the cost of material furnished and labor performed in installing an air cooler in the defendant's place of business. An agreement for the installation was not in dispute but as a defense to the action defendant pleaded an implied warranty that the equipment installed would be suitable for the purpose and that such equipment had proved unsuitable. In the lower court the action was tried before a judge sitting without a jury. He found a breach of the implied warranty, award-

ed judgment to the defendant and plaintiff appeals. The parties will be referred to as they appeared in the trial below.

The evidence shows that some time in June, 1947, Mr. Dunn, an employee of the defendant, approached one George Maycock, an employee of A. A. Maycock Company, and told him the defendant was interested in having a cooling system installed in his place of business, and suggested that Maycock talk with Mr. Denn about it. Maycock Company handled heating and ventilating equipment, including the Palmer Evaporative Cooler, but did no installation work. Not long after the first conversation, George Maycock went to the defendant's jewelry store to discuss the sale of an air cooler. In connection with the proposed sale Maycock explained to and discussed with defendant the various ways of securing a cooling action, the cost and types of equipment, and the best location for the particular type of cooler; he assured the defendant the equipment would be satisfactory as an inside installation; and, that it would make no more noise than an ordinary electric fan. Maycock was specifically told that defendant wanted a machine which would cool the front end of the store, and if his machine would not do this the defendant would not be interested in a purchase. Several days later, Maycock returned to the defendant's jewelry store with Mr. Goaslind, an employee of the plaintiff. There is some dispute in the record as to whether plaintiff was contacted at the suggestion of defendant or whether Maycock brought him into the store on his own initiative. On this visit to the store Goaslind and Maycock discussed the installation of the equipment, took measurements and planned the installation.

On June 7th, which defendant claims was after the installation work had commenced, plaintiff caused a letter to be delivered to defendant in which it was stated that plaintiff would furnish and install a 7500 H Palmer Evaporative Cooler, with all necessary fittings and grill for the sum of $870.00. This installation was to include electrical

and plumbing work. The defendant impliedly accepted the terms and the plaintiff installed the air-cooler on the balcony in the upstairs of the store.

When the air-cooler was first put in use it was noisy, it scattered water over the ceiling in front of the machine, it drew dirt and dust from the alley in back of the store and blew it into the store, it failed to decrease the temperature and it caused a musty odor to be noticeable. The defendant complained to the plaintiff about the unsatisfactory operation of the machine and the plaintiff made several attempts to remedy the situation and make the machine operate more satisfactorily. It was relocated in the office, but it blew the papers off the desks. Subsequently, a new motor was installed and other repair work performed, but the machine was still unsatisfactory. Regardless of the efforts to correct the deficiencies there was not much difference in the temperature of the store when the machine was running and when it was not.

In the spring of 1948 representatives of plaintiff, Maycock Company and defendant discussed the situation. Defendant requested that the machine be taken out since it could not be made to work satisfactorily. The others assured him that the machine could be fixed so that it would operate as it should and other repairs were made, but it still failed to function properly. A thermometer was placed in the store in July and August of 1948 and testimony showed that the recorded temperature in the store with the cooler on was 98 degrees in the front of the store and 94 degrees in back near the cooler. The noise was still present and objectionable, making it difficult to talk with customers. Dust and dirt were still being drawn in from the alley through the conditioner and scattered about the room. The dust and dirt which fell onto the watch repair benches made it difficult to repair watches.

Witnesses for both parties testified that the name "Palmer Evaporative Cooler" meant nothing to defendant and

that he was unfamiliar with air-conditioning machines. Defendant testified he was under the impression that the Maycock Company was to do the installing and that this was his impression until he received the letter from the plaintiff. He further testified that when Maycock came to the jewelry store with Goaslind defendant assumed that Goaslind was working for Maycock. The defendant complained to both the Maycocks and to the plaintiff regarding the unsatisfactory performance of the air-cooler and offered to make payment when the deficiencies were corrected.

Plaintiff was a party to the written memorandum and demand for payment was made by him for the entire cost of the machine and its installation. No demand was made by the Maycock Company for payment for any of the service or for any part of the equipment, and George Maycock testified that the defendant was not obligated to that company for the machine.

In attempting to deny the existence of a warranty, plaintiff contends that the proper interpretation of the facts requires a finding that this was a purchase of a specified known article, described by its patent or trade name, and hence, the case comes under the provisions of sub-section (4) of Section 81-1-15 U. C. A. 1943, which provides:

"In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

The defendant, on the other hand, in seeking to affirm the existence of a warranty, contends that sub-section (1) of the above section should be applied. It provides as follows:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he is the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Plaintiff cites several cases to substantiate his contention, including two cases decided by this court: *Battle Creek Bread Wrapping Machine Co.* v. *Paramount Baking Co.,* 88 Utah 67, 39 P. 2d 323, and *Landes & Co.* v. *Fallows,* 81 Utah 432, 19 P. 2d 389, 391. Neither of these cases is helpful to the plaintiff's case. In *Landes & Co.* v. *Fallows,* supra, the conditional sales contract covering the sale of a second-hand harvester contained a provision that no warranties of any kind had been made by the seller, and we held that the nonwarranty clause precluded any implied warranty. Moreover, in that case the goods had been inspected before the sale. Mr. Justice Hanson, speaking for the court, used the following language:

"* * * there is no warranty of fitness where the buyer orders a specific article for a specific purpose known to the seller."

Futhermore, there it was shown that the buyer had purchased the harvester after inspecting it, and the opinion contained the additional language:

"* * * Where goods are sold on inspection, there is no standard but identity, and no warranty implied other than that the identical goods sold, and no others, shall be delivered."

In the instant case no specific goods had been inspected and selected by the defendant.

*Battle Creek Bread Wrapping Machine Co.* v. *Paramount Baking Co.,* supra, is also distinguishable from the instant case. There, this court found an express ■ warranty of fitness. The present Chief Justice, then a district judge, speaking for the court, said, 88 Utah at page 72, 39 P. 2d at page 325:

"The fact that an article has a tradename does not negative an implied warranty of fitness for a particular purpose, where it is purchased, not by name, but for a particular purpose and supplied for that purpose. 55 C. J. 757. In the present contract the machine was ordered by the name of 'Duplex Wrapping Machine.' Had the contract remained silent as to warranties, there would have been some justification for the conclusion that it was a purchase of a

specified known article, but the contract contains this clause: 'Standard models are guaranteed to wrap uniform loaves or packages within range and capacity for which machine is designed, provided machine is kept in proper adjustment, operated with competent help, and not speeded beyond recommendations of vendor.'

"The parties apparently recognized that the use of the trade-name of the machine was purely a matter of convenience in designation. These facts, considered along with the fact that the replacement arose out of complaints of defectiveness in the first machine, are rather substantial evidence of the fact that no reliance was placed upon the name of the article, but rather that the parties were concerned with its fitness to accomplish its purpose."

It is apparent from the facts in this case that the respondent was primarily interested in air-conditioning his place of business, rather than in purchasing any specific chattel. The plaintiff was aware that defendant knew nothing about air-cooling equipment and he ■ was also aware of the fact that the principal object of the negotiations and subsequent sale was to provide a suitable cooling system for defendant's jewelry store. There is no evidence in the record that respondent ordered a "Palmer Evaporative Cooler," or that he suggested, desired or preferred any particular type. The first time the brand name of the cooler appears to have been mentioned is in the letter from plaintiff to defendant wherein plaintiff offered to furnish such a cooler. The implied warranty of fitness for the particular purpose is not negatived by the seller's use of a brand name when it is used merely for convenience in identifying the equipment to be installed. Furthermore, from the efforts of the plaintiff to remedy whatever defects there were in the equipment and the installation (including relocating the cooler, installing a new motor and changing baffles) it can reasonably be inferred that his understanding of the nature of the transaction was that he was to install a suitable air-cooling system for the defendant, not that he was selling merely a patented cooler which could be parked anywhere in the store.

Plaintiff further attempts to avoid the liability for breach of the implied warranty on the grounds that he was an "installer" rather than a "seller." We believe the activities of the plaintiff amounted to considerably more than those of a mere installer. It is true that he did the installation work, and that he was called in to give an estimate on what the installation would cost. But in his estimate he included the cost of all the equipment to be used in the installation and he provided and sold all of the equipment, presumably at a profit, which the defendant agreed to purchase. The equipment and the labor were charged by the plaintiff to the defendant, and the defendant is not indebted to anyone else for any of the equipment installed. We fail to see how the plaintiff can be the seller for the purpose of receiving the profits from the transaction and then successfully establish himself a mere installer for the purpose of avoiding the responsibilities of a seller. In his letter of June 7, 1947, plaintiff undertook not only to "install" the equipment for the defendant, but also to "furnish" the equipment necessary for the complete installation.

Plaintiff lastly seeks to be relieved of liability for breach of warranty by claiming that defendant did not rely on his skill or judgment since he did not enter into the negotiations until after the type of cooler had been agreed upon. The primary negotiations for the installation of this cooler were between George Maycock and the defendant, but the contract for the sale and installation was not agreed upon between them. The first time there could have been an agreement for the sale was when defendant was given the letter showing the cost to him of the installation. The offer was submitted by and the resultant contract was with the plaintiff and not with Maycock. Plaintiff might have elected to submit his bid to Maycock or to bid only on the installation and let Maycock submit a separate bid, but he elected to go further than this. He elected to become the seller of the machine and in

so doing he adopted Maycock as his representative for the sale. He knew that Maycock had been negotiating with defendant for the installation of a cooling system and agreed to join with Maycock in the venture. His primary responsibility under the contract was to install a satisfactory air conditioning system which required satisfactory equipment and proper installation. He was aware of the fact that defendant was unfamiliar with conditioning installations and must accept the skill and judgment of the parties participating in the sale and installations. Plaintiff was willing to enter into some kind of arrangements with Maycocks so that he could become the seller. He had his employee survey the premises with Maycock, joined with Maycock in determining the appropriate location and other details of the installation, and knew the merchandise he was to furnish and install must be satisfactory for use in a jewelry store. Plaintiff, having elected to take the benefits of Maycock's sales activities and knowing that defendant must rely on both for a satisfactory installation, is charged with the responsibility of furnishing an installation which must be reasonably fit for the purpose intended. The statute throws a partial cloak of protection around a buyer who purchases an article for a particular purpose when he must rely on the skill or judgment of a seller to determine if the article will serve the purpose. The plaintiff, having become the seller of the air conditioner, is charged with the statutory warranty because he or those who assisted him in making the sale knew the purchaser was unfamiliar with the capabilities of the machine and its proper installation and they, not the purchaser, recommended and selected the one in issue as fit for the purpose desired by the purchaser. When it failed in its purpose the right of the seller to recover the purchase price was defeated.

The judgment is affirmed, costs to respondent.

PRATT, C. J., and WADE, WOLFE, and McDONOUGH, JJ., concur.