[S. F. No. 20188. In Bank. Apr. 6, 1961.]

JAMES P. ACED, Respondent, v. HOBBS-SESACK PLUMBING COMPANY (a Partnership), Appellant.

Crist, Peters, Donegan & Brenner and John M. Brenner for Appellant.

Ropers, Majeski & Kane and Eugene J. Majeski for Respondent.

GIBSON, C. J.—This is an appeal by cross-defendant Hobbs-Sesack Plumbing Company (hereafter called Hobbs) from an order granting a new trial to cross-complainant Aced, who was doing business under the fictitious name of Functional Construction Company.

Aced contracted with plaintiff owners to build a home with a radiant heating system installed in a concrete slab floor. Hobbs, as subcontractor, agreed with Aced to furnish the necessary labor and material for the system, and the installation was completed by the end of January 1953. Numerous leaks developed in the tubing, and in 1955 the entire system had to be replaced. In September 1956 the owners of the home brought this action against Aced for damages, and on February 11, 1957, Aced filed an answer and cross-complaint which named Hobbs as a cross-defendant. Aced stipulated with the owners that judgment might be entered against him for $7,715.54, and the trial proceeded upon Aced's cross-complaint against Hobbs.

It appears that the job of installing the heating system was done in a workmanlike manner, and Aced stipulated that he was relying solely on the theory that there had been a breach of an implied warranty of merchantability. The court found that there was a sale of the tubing by Hobbs to Aced under a written agreement giving rise to an implied warranty of merchantability but that there was no breach of the warranty because the leaks could have been produced by several causes and Aced had failed to prove that they were due to unmerchantable quality of the tubing. The court also concluded that Aced's cause of action was barred by the four-year limitation of section 337, subdivision 1, of the Code of Civil Procedure. Judgment was entered in favor of Hobbs on the cross-complaint, and Aced moved for a new trial on the grounds that errors in law had occurred at the trial, that the evidence was insufficient to justify the decision, and that the decision was against law. The court made an order in writing which stated that the motion "for a new trial upon the issues set forth by the cross-complaint is granted."

A preliminary question is presented as to whether the court's order may properly be treated as granting a new trial upon the ground of insufficiency of evidence. ▆ Section 657 of the Code of Civil Procedure sets forth the grounds for a new trial and provides that when a new trial is granted for insufficiency of the evidence "the order shall so specify this in writing and shall be filed with the clerk within ten days after the motion is granted; otherwise, on appeal from such order it will be conclusively presumed that the order was not based upon that ground. . . ." If this provision is not complied with, the appellate court is precluded from considering insufficiency of the evidence as justification for the order

unless the evidence is insufficient as a matter of law and is without conflict on any material point. (*Adams* v. *American President Lines*, 23 Cal.2d 681, 683 [146 P.2d 1]; *Sheets* v. *Southern Pacific Co.*, 212 Cal. 509, 512 [299 P. 71]; *Phillips* v. *Powell*, 210 Cal. 39, 41 [290 P. 441]; *Yoakam* v. *Hogan*, 198 Cal. 16, 20 [243 P. 21]; *Biaggi* v. *Ramont*, 189 Cal. 675, 677 [209 P. 892]; *Read* v. *Pacific Electric Ry. Co.*, 185 Cal. 520, 521 [197 P. 791].)

 Section 657 discloses an intent that the required written specification be made in some unmistakable way (*Dempsey* v. *Market Street Ry. Co.*, 23 Cal.2d 110, 115 [142 P.2d 929]), and this intent will obviously be frustrated if an order for a new trial is sustained upon the ground of insufficiency of the evidence where the language of the order is vague or ambiguous. [██ Whenever the order is in general terms, mentioning no ground, or specifies grounds not including insufficiency of the evidence, we must assume that it was not based on that ground. (See also *Malloy* v. *Fong*, 37 Cal.2d 356, 376 [232 P.2d 241]; *San Francisco* v. *Tillman Estate Co.*, 205 Cal. 651, 654-655 [272 P. 585].) It is preferable, of course, that the statutory language be used. Some departure in terminology may be permissible, however, if the intention of the court is clear. For example, it has been held that a sufficient specification is made by an order "granted on all the grounds stated in the notice of intention to move for a new trial," the theory being that the grounds stated in the motion, including insufficiency of the evidence, were incorporated by reference. (*Lewis* v. *Southern California Edison Co.*, 116 Cal.App. 44, 49-50 [2 P.2d 419]; *Beckley* v. *Harris*, 84 Cal.App. 557, 559 [258 P. 428].)

 Several cases decided by the District Courts of Appeal have held, contrary to the views we have expressed, that a declaration in the order that a new trial is granted as to "all issues," or as to all issues made by the pleadings, adequately specifies the ground of insufficiency of the evidence. (*Legg* v. *Mutual Benefit H. & A. of Omaha*, 136 Cal. App.2d 887, 890-892 [289 P.2d 550, 290 P.2d 87]; *Bayley* v. *Souza*, 42 Cal.App.2d 166, 169-172 [108 P.2d 725]; *Lucerne Country Club* v. *Beal*, 21 Cal.App.2d 121, 124-128 [68 P.2d 408]; see *Piru Citrus Assn.* v. *Williams*, 95 Cal.App.2d 911, 914-916 [214 P.2d 426].) These cases rely in part upon the general principle that the correctness of a court's order will be presumed, and they express the view that if the language used is *susceptible* of being interpreted as showing an intent

to include insufficiency of the evidence as a ground, it should be so interpreted. This reasoning, however, is improper where a statute requires that the order ''shall so specify'' the ground and that, if it does not, the absence of the ground ''will be conclusively presumed.'' A reference merely to the issues raised by the pleadings fails to meet the requirement, because the pleadings, considered alone, do not disclose whether the evidence to be introduced at trial will present any substantial question as to sufficiency or weight of the evidence. The decisions of the District Courts of Appeal cited in this paragraph are disapproved insofar as they are inconsistent with the views expressed herein.

We are not concerned here with the cases which have held that an order granting a new trial with respect to the issues of excessiveness or inadequacy of damages constitutes a proper specification of the ground of insufficiency of the evidence as to those issues. (E.g., *Sinz* v. *Owens,* 33 Cal.2d 749, 760-761 [205 P.2d 3, 8 A.L.R.2d 757]; *Kralyevich* v. *Magrini,* 172 Cal.App.2d 784, 787 et seq. [342 P.2d 903]; *People* ex rel *Dept. of Public Works* v. *McCullough,* 100 Cal.App.2d 101, 104-105 [223 P.2d 37] [valuation]; *Cox* v. *Tyrone Power Enterprises,* 49 Cal.App.2d 383, 389-390 [121 P.2d 829]; *cf. Secreto* v. *Carlander,* 35 Cal.App.2d 361, 364-365 [95 P.2d 476].) These cases, correctly or incorrectly, rely upon the theory that an order granting a new trial for excessive or inadequate damages necessarily includes a specification that the evidence is not sufficient to support the judgment. No such problem, of course, is presented here. We are likewise not concerned here with cases which hold that where the sole ground for new trial stated in the motion is insufficiency of the evidence, an order for new trial made without statement of any ground is adequate to show that it was granted on the ground of insufficiency of the evidence. (E.g., *Ice-Kist Packing Co.* v. *J. F. Sloan Co.,* 157 Cal.App.2d 695, 697-699 [321 P.2d 840]; *cf. Van Ostrum* v. *State of California,* 148 Cal.App.2d 1, 4 [306 P.2d 44].)

It follows from what we have said that the order of the trial court did not amount to a specification of insufficiency of the evidence as a ground for granting a new trial. However, in view of the fact that before we could reach this conclusion it was necessary to disapprove of cases upon which both the trial court and counsel may have relied with respect to the form of the order, we feel that we should not refuse to consider the ground of insufficiency of the evidence as a basis

for the order. While it is true that ordinarily an overruling decision is deemed to state what the law was from the beginning and is therefore generally given retroactive effect, an exception has been applied in several instances with respect to procedural matters. (*In re Bine,* 47 Cal.2d 814, 818 [306 P.2d 445] ; *Phelan* v. *Superior Court,* 35 Cal.2d 363, 371-372 [217 P.2d 951] ; see *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 680-681 [312 P.2d 680] ; *cf. People* v. *Kitchens,* 46 Cal.2d 260, 262-263 [294 P.2d 17] ; *Barcelone* v. *Melani,* 156 Cal.App. 2d 631, 632-633 [320 P.2d 203] ; *Parrott* v. *Furesz,* 153 Cal. App.2d 26, 30-32 [314 P.2d 47].) Under the circumstances of the present case it would be unfair to apply section 657 so as to deprive Aced of the possibility of having the order for a new trial sustained upon the ground of insufficiency of the evidence.

Hobbs contends that the order granting a new trial must be reversed because, it asserts, as a matter of law no decision may properly be reached other than the one originally made by the trial court. As separate reasons for this conclusion it argues that under the circumstances of this case there was no implied warranty of merchantability, that even if such a warranty existed there is no substantial evidence that it was breached, and that Aced's action is barred by the statute of limitations.

In determining whether there was an implied warranty of merchantability we must first consider whether, as found by the trial court, the transaction between the parties was a sale, in which event the warranty provisions of the Uniform Sales Act (Civ. Code, §§ 1734-1736) would govern. The contract provided that Hobbs would "furnish the necessary labor and material" for the heating system, and this language suggests that the contract between the parties is one for labor and material rather than a contract to sell. In a leading case, *Sidney Stevens Implement Co.* v. *Hintze,* 92 Utah 264 [67 P.2d 632, 634 et seq., 111 A.L.R. 331], it was held that if goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the transaction is not a sale within the meaning of the Uniform Sales Act. This limitation on what constitutes a sale is known as the Massachusetts rule and represented the weight of authority prior to the Uniform Sales Act. (See 1 Williston on Sales [rev. ed. 1948] § 55a, p. 148.) The Sidney Stevens Implement case recognized that the limitation is expressed in the act

only in the section relating to the statute of frauds, but the opinion points out that nothing in the act indicates an intent to eliminate the prior distinction between a contract of sale and a contract for labor and material, and the court held that the Massachusetts rule must therefore be considered as also limiting the applicability of the act with respect to matters other than the statute of frauds. (In accord: *Gross Income Tax Div. of State* v. *W. B. Conkey Co.* (Ind.), 90 N.E.2d 805, 807; *M. K. Smith Corp.* v. *Ellis*, 257 Mass. 269 [153 N.E. 548, 549]; *Goss* v. *Suburban Motors* (Mo. App.), 282 S.W.2d 864, 866; *Racklin-Fagin Const. Corp.* v. *Villar*, 156 Misc. 220 [281 N.Y.S. 426, 427].)

Several cases not involving the statute of frauds have applied the Massachusetts rule in holding that there was no sale in situations where the person supplying the labor and materials incorporated the product into a building. (*Authorized Supply Co. of Arizona* v. *Swift & Co.*, 277 F.2d 710, 712 [refrigeration installation]; *Rino* v. *Statewide Plumbing & Heating Co.*, 74 Idaho 374 [262 P.2d 1003, 1005] [heating system]; *Crystal Recreation* v. *Seattle Assn. of Credit Men*, 34 Wn.2d 553 [209 P.2d 358, 362] [restaurant fixtures]; see *Thomas* v. *Buttress & McClellan, Inc.*, 141 Cal.App.2d 812, 815 [297 P.2d 768] [construction of building]; *United States* v. *San Francisco Electrical Contractors Assn.*, 57 F.Supp. 57, 67 [construction of building]; 77 C.J.S. 584-585; *cf Steiger etc. Pottery Works* v. *Sonoma*, 9 Cal.App. 698, 700-701 [100 P. 714] [contract to manufacture tile and set it on roof].)

In such a situation the test is not whether the materials used were specially manufactured for the particular work but whether the finished product in which they are incorporated is specially constructed for the job and not suitable for use in the ordinary course of the contractor's business. Here the tubing was embedded in concrete as part of a heating system designed for the particular home in which it was installed.

The following decisions, cited by Aced for the proposition that the transaction was a sale under the Uniform Sales Act, are not persuasive here: *Burge Ice Machine Co.* v. *Weiss*, 219 F.2d 573; *Service Conveyor Co.* v. *Shatterproof Glass Corp.*, 219 F.2d 583; *Wiseman* v. *Gillioz*, 192 Ark. 950 [96 S.W.2d 459]; *Carver* v. *Denn*, 117 Utah 180 [214 P.2d 118]. The two federal cases were both governed by Michigan law and were decided solely on the authority of *Cox-James Co.* v. *Haskelite Mfg. Corp.*, 255 Mich. 192 [237 N.W. 548], in which no question was raised as to whether or not there was a sale but the

issue was whether there was a sale of a conveyor system as distinguished from a sale of materials. The Arkansas case involved a special definition of sale at retail as used in a sales tax statute and turned in part upon a rule against making exemptions from the taxing power. In *Carver* v. *Denn, supra,* it was not contended that there was no sale at all but merely that the person sought to be charged with a warranty was the installer rather than the seller, and, so far as appears, the air cooler involved was suitable for sale to others.

For the reasons given we conclude that the contract is one for labor and material.

There may nevertheless be an implied warranty. It was said in *Gagne* v. *Bertran,* 43 Cal.2d 481, 486 [275 P.2d 15], that for historical reasons warranties have become identified primarily with transactions involving the sale or furnishing of tangible chattels but that they are not confined to such transactions. Several cases dealing with construction contracts and other contracts for labor and material show that ordinarily such contracts give rise to an implied warranty that the product will be fit for its intended use both as to workmanship and materials. (*Kuitems* v. *Covell,* 104 Cal. App.2d 482, 484-485 [231 P.2d 552]; *Economy Fuse & Mfg. Co.* v. *Raymond Concrete Pile Co.,* 111 F.2d 875, 878-879; *In re Talbott's Estate,* 184 Kan. 501 [337 P.2d 986, 989]; *Mann* v. *Clowser,* 190 Va. 887 [59 S.E.2d 78, 84]; cf. *Jose-Balz Co.* v. *De Witt,* 93 Ind. App. 672 [176 N.E. 864, 865]; *Baerveldt & Honig Construction Co.* v. *Szombathy* (Mo.), 289 S.W.2d 116, 120.) These cases support the proposition that although the provisions of the Uniform Sales Act with respect to implied warranty (Civ. Code, §§ 1734-1736) apply only to sales, similar warranties may be implied in other contracts not governed by such statutory provisions when the contracts are of such a nature that the implication is justified.

As we have seen, Aced stipulated that in his action against Hobbs he was relying solely on breach of an implied warranty of merchantability. The reference in the stipulation to merchantability, a term generally used in connection with sales, does not preclude reliance on breach of warranty although the contract is one for labor and material. With respect to sales, merchantability requires among other things that the substance sold be reasonably suitable for the ordinary uses it was manufactured to meet. (*Simmons* v. *Rhodes & Jamieson, Ltd.,* 46 Cal.2d 190, 194 [293 P.2d 26]; *Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682, 694 [268 P.2d 1041].)

The defect of which Aced complains is that the tubing was not reasonably suitable for its ordinary use, and his cause of action may properly be considered as one for breach of a warranty of merchantability. There is no justification for refusing to imply a warranty of suitability for ordinary uses merely because an article is furnished in connection with a construction contract rather than one of sale. The evidence, if taken in the light most favorable to Aced, would support a determination that there was an implied warranty of merchantability.

There is no merit in Hobbs' contention that the evidence is insufficient to show a breach of a warranty of merchantability. The evidence shows that the leaks in the tubing used in the radiant heating system were caused by corrosion. The tubing was made of steel and was coated with plastic to prevent corrosion, which would occur if the coating was broken or scratched and not repaired. An expert testified that the coating on this type of tubing could be damaged in many ways during the normal course of installation, that the abrasive action of stones contained in the concrete in which the tubing is embedded or the boots of workmen walking over the tubing would cause its coating to chip, that workmen are required to walk on it "in the natural course of this kind of job," that the tubing had leaked on other jobs which had been done in the customary manner, and that its coating was "insufficient" and, "having failed," left only a "piece of steel pipe that corroded in accordance with the usual laws of nature."

Nor do we agree that Aced's action was barred by subdivision 1 of section 337 of the Code of Civil Procedure, which provides that, with certain exceptions not relevant here, an action upon a contract, obligation, or liability based on a written instrument must be commenced within four years. As noted previously, the installation of the heating system was completed by the end of January 1953, and Aced's cross-complaint was filed more than four years later, on February 11, 1957. It is Hobbs' position that any warranty as to the quality of the tubing must be viewed as having been breached, if at all. no later than when the installation was completed, irrespective of whether the defective character of the tubing was or could have been discovered at that time.

We are satisfied, however, that this is a case which could properly be found to come within the operation of the

principle that, if a warranty relates to a future event before which the defect cannot be discovered by the exercise of reasonable diligence, the warranty, though accompanied by a representation as to present condition, is prospective in character and the statute of limitations begins to run as of the time of that event. This principle, while not always stated in identical language, has been applied in a variety of factual situations. (*Southern Calif. Enterprises* v. *D. N. & E. Walter & Co.*, 78 Cal.App.2d 750, 754-756 [178 P.2d 785]; *Sweet* v. *Watson's Nursery*, 23 Cal.App.2d 379, 381-382 [73 P.2d 284]; *Ackerman* v. *A. Levy & J. Zentner Co.*, 7 Cal.App.2d 23, 25-27 [45 P.2d 386]; *Firth* v. *Richter*, 49 Cal.App. 545, 549-550 [196 P. 277]; *J. Kennard & Sons Carpet Co.* v. *Dornan*, 64 Mo. App. 17, 25; *Heath* v. *Moncrieff Furnace Co.*, 200 N.C. 377 [156 S.E. 920, 922; 75 A.L.R. 1082]; *Cunningham* v. *Frontier Lumber Co.* (Tex. Civ. App.), 245 S.W. 270; see 1 Williston on Sales (rev. ed. 1948) § 212a, p. 550; 75 A.L.R. 1086; *cf. Burge* v. *Albany Nurseries, Inc.*, 176 Cal. 313, 317-319 [168 P. 343]; *Shearer* v. *Park Nursery Co.*, 103 Cal. 415, 417-419 [37 P.2d 12, 42 Am.St.Rep. 125].) For example, several of these cases construed a warranty that nursery stock was of a certain variety as including a warranty that it would bear, upon maturity, fruit produced by nursery stock of that kind. ▇▇▇▇ As illustrated by the cited Missouri case, the principle in question has been followed with respect to implied as well as express warranties, and it has long been recognized in this state that the time when the statute of limitations begins to run is the same whether a warranty is express or implied. (*Cf. Gross* v. *Kierski*, 41 Cal. 111, 114.)

▇▇▇▇ A warranty that the tubing was of a quality reasonably permitting its use in a radiant heating system would include a prospective warranty that the tubing would not, within a reasonable period of time, corrode and leak. ▇▇▇▇ It obviously could be determined that a reasonable time had not expired when the leaks were first noticed about a year after the heating system had been installed. Even if it might be inferred from some of the evidence that the tubing was so defective in character that a general contractor such as Aced should have discovered the defect at some time before the leaks occurred, there is other evidence from which a contrary finding could be made. There is testimony, for example, that at the time of the transaction those engaged in the building trade, as well as governmental agencies, believed that the brand of tubing used was of merchantable quality, and

between the time of the installation and the time the leaks were noticed there was apparently no way of knowing whether corrosion was occurring, since the tubing was embedded in the concrete floor of the building. Under the circumstances a conclusion is permissible that the defective character of the tubing could not reasonably have been discovered earlier than when the leaks occurred, and Aced's cross-complaint was filed within four years thereafter.

*Mary Pickford Co.* v. *Bayly Bros., Inc.*, 12 Cal.2d 501 [86 P.2d 102], is readily distinguishable. That case did not involve a warranty of merchantability but a warranty that securities issued by the defendants were genuine and valid. The warranty arose out of an implied representation that the corporation commissioner had authorized issuance of the securities, and the falsity of that representation could easily have been ascertained at the time of the transaction. There was thus no warranty relating to a future event before which the defect could not reasonably have been discovered. In holding that the statute of limitations began to run as of the time of the transaction, the court stated: "The typical warranty, being an undertaking regarding the quality of goods at the time of their sale must, if ever broken, be broken at that time; and the statute of limitations, therefore, begins to run immediately." (12 Cal.2d at p. 521.) This statement, as shown by the word "typical," was made solely with respect to the ordinary situation and was not intended to affect the rule regarding prospective warranties.

It should also be pointed out that the filing of Aced's suit may have been timely regardless of whether the running of the statute of limitations began when the heating system was installed or when the leaks appeared. The statute of limitations is tolled where one who has breached a warranty claims that the defect can be repaired and attempts to make repairs. (*Southern Calif. Enterprises* v. *D. N. & E. Walter & Co., supra*, 78 Cal.App.2d 750, 755; *Louisville Silo & Tank Co.* v. *Thweatt* (Ark.), 295 S.W. 710, 712; *Heath* v. *Moncrieff Furnace Co.* (N.C.), *supra*, 156 S.E. 920, 922; see Williston on Contracts [rev. ed. 1938] § 2020, p. 5677; 75 A.L.R. 1086, 1087.) Whether this rule is applicable is not entirely clear from the present record, but there is testimony that early in 1954 a representative of Hobbs came to the home when the owners complained of hearing running water under the floor, that he made holes in the concrete floor of the living room and

replaced some of the tubing, and that it took him several months to "get all the leaks in that particular area."

The order granting a new trial is affirmed.

Traynor, J., McComb, J., White, J., and Dooling, J., concurred.

PETERS, J., Concurring and Dissenting.—I dissent from that portion of the majority opinion that holds that when a motion for new trial is made on several grounds, including insufficiency of the evidence, and is granted on "all issues" or "as to all the issues made by the pleadings," such order does not adequately specify insufficiency of the evidence. I concur with all other portions of the majority opinion.

In reaching the conclusion that an order granting a new trial in the form above described does not include insufficiency of the evidence, the majority opinion frankly concedes that its conclusion is contrary to the existing case law on this subject, and finds it necessary to overrule that case law. The cases thus specifically overruled are *Legg* v. *Mutual Benefit H. & A. of Omaha,* 136 Cal.App.2d 887 [289 P.2d 550, 290 P.2d 87] ; *Bayley* v. *Souza,* 42 Cal.App.2d 166 [108 P.2d 725] ; *Lucerne Country Club* v. *Beal,* 21 Cal.App.2d 121 [68 P.2d 408] ; and *Piru Citrus Assn.* v. *Williams,* 95 Cal.App.2d 911 [214 P.2d 426]. The earliest of these cases was decided in 1937, and the latest in 1955. In two of the four cases—the Legg and Bayley cases—hearings were denied by this court. In the Bayley case there was a dissent, fully setting forth the arguments now approved by the majority, but nevertheless this court denied a hearing, with two justices voting for a hearing.

Thus, the point overruled is not a new or novel one, but to the contrary has been the announced law of California at least since 1937, a period of 24 years. No case has been found containing the interpretation approved in the majority opinion. Certainly the majority cites no such case, and I have found none. Thus, the rule announced by the four overruled cases is well settled and presumably is well known to and has been followed by trial judges and lawyers in this state. In frank acknowledgment of this fact, the majority takes the highly unusual position that the old overruled rule shall be applied to the instant case and that the new rule shall be applied prospectively only. Under the circumstances of this case, that amounts, practically, to conceding that the

new rule is an exercise of the legislative rather than the judicial function.

There is no doubt, of course, that this court possesses the power to overrule prior cases, and also, in proper cases, possesses the power to make its decisions operate only prospectively. But these powers should be exercised sparingly, and only when there exist compelling reasons of policy, logic or law that require their exercise. No such reasons are announced by the majority. In fact, in my opinion, they do not exist.

Certainly, it can be said, that the rule announced in the overruled cases is not only a possible but is a reasonable interpretation of section 657 of the Code of Civil Procedure. In *Bayley* v. *Souza, supra,* 42 Cal.App.2d 166, after discussing and analyzing several cases where either the precise or related points were involved, the appellate court stated (p. 170): "These cases demonstrate that the order here involved, granting the new trial 'on all issues,' is susceptible of the reasonable interpretation that the trial court intended by that language to include insufficiency of the evidence. What else can the expression 'on all issues' mean? It must mean either all issues presented by the pleadings, which would include the issues of negligence of appellant and contributory negligence of respondent, and the sufficiency of the evidence to support the implied finding of the jury on these issues, or it must mean all issues presented by the motion for a new trial, one of which was the sufficiency of the evidence. In either event, under the cases cited, such order is not a general order, but must be interpreted as including a reference to insufficiency of the evidence within the meaning of section 657 of the Code of Civil Procedure." This reasoning was sound when written, and is sound now.

The majority opinion seems to recognize the correctness of the well-settled rule that a general order granting a new trial on the issues of excessiveness or inadequacy of damages constitutes a proper specification of insufficiency of the evidence. At least one fairly recent Supreme Court case and four appellate court cases are cited as announcing such a rule. If such a specification "necessarily" includes a specification of insufficiency, so does the specification of "all issues" necessarily and inevitably include insufficiency as one of its grounds.

Under these circumstances it is my opinion that we should not overrule the existent well-settled rule, and certainly should

not exercise the extraordinary and unusual power of making the newly adopted rule prospective only in its operation.

For these reasons I dissent as to the one issue discussed. On all other issues I am in hearty accord with the opinion as written.

Schauer, J., concurred.