J. KENNARD & SONS CARPET COMPANY, Appellant, v. ROBERT DORNAN, Respondent.

St. Louis Court of Appeals, December 10, 1895.

1. Sales: CUSTOM AS TO IMPLIED WARRANTY. A custom, that the sale of a carpet by a manufacturer carries with it the two implied warranties that the carpet is free from spots and discoloration caused by grease left in it in the course of manufacture, and that it will not after it has been laid develop or show spots or discoloration from that cause, is reasonable and valid.

2. ———: ———: STATUTE OF LIMITATIONS AS TO ENFORCEMENT OF WARRANTY. When such spots do not exist at the time of the sale but develop later, the right of action on the second warranty begins to run, for the purposes of the statute of limitations, from the time of their appearance.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*Phillips, Stewart, Cunningham & Eliot* for appellant.

The trial court erred in refusing instructions 1 and 3, asked by plaintiff. There was abundant evidence of the alleged usage. That usage was proved to be uniform. It was certain, reasonable, and lawful. The suit was brought within five years after breach of the

warranty implied by the usage. Lawson on Usages and Customs, p. 305, sec. 157; *Fatman v. Thompson*, 2 Disney, 482; *Sumner v. Tyson*, 20 N. H. 387; Benjamin on Sales [6 Ed., Bennett], secs. 661, 662, 667, 673a; note 16, pp. 644, 646, and cases cited; Story on Sales [4 Ed.], secs. 203, 368, 369, 371, 375, and cases cited; *Walker v. Deaver*, 79 Mo. 664; *White v. Stevens*, 13 Mo. App. 241; *Priest v. Deaver*, 22 Mo. App. 276; *Taylor v. Priest*, 21 Mo. App. 685; Hilliard on Sales [3 Ed.], pp. 391, 392; *Gross v. Kierski*, 41 Cal. 111; *Case v. Hall*, 24 Wend. 102; *Linton v. Porter*, 31 Ill. 107; *Long v. Hicking*, 28 Miss. 777, 789; *Scudder v. Bradbury*, 106 Mass. 422; *Jones v. Bowden*, 4 Taunt. 847; *Hursh v. North*, 40 Pa. St. 421.

*Lubke & Muench* and *George W. Lubke, Jr.*, for respondent.

If there is a breach of warranty in the sale in question, plaintiff's cause of action therefor accrued at the date of the sale. The sale under the undisputed evidence took place prior to April 5, 1884, more than five years next before the commencement of this suit. The action is, therefore, barred by the statute of limitations. *Battley v. Faulkner*, 3 B. & Ald. 288; *Allen v. Mille*, 17 Wend. 202; *Bancum v. Streater*, 5 Jones [N. C.], 70; *Blithen v. Lovering*, 58 Me. 437. The fact, that plaintiff was not able to discover the breach of the warranty until some months after the sale and delivery, does not change the rule. *Troop v. Smith*, 20 Johns. 33; *Allen v. Todd*, 6 Lans. 222; *Battley v. Faulkner*, *supra*. A custom to be valid must be certain, uniform, well known, and general, *i. e.*, observed by all of a particular class of persons. *Foley v. Mason*, 6 Md. 37; *Berkshire Woolen Co. v. Proctor*, 7 Cush. 417; *Railroad v. Yeager*, 34 Ind. 1; *Oelnicks v. Ford*, 23 How. 49;

*Wood v. Wood*, 1 Car. & P. 59; reported in full in Lawson on Usage, p. 3. It must be reasonable and fair. *Tilley v. Chicago*, 103 U. S. 155. It must be in harmony with the general rules of law, and subservient to them. *Thompson v. Riggs*, 5 Wall. 663; *U. S. v. Buchanan*, 8 How. 83; *Barnard v. Kellogg*, 10 Wall. 383; *Martin v. Ashland M. Co.*, 49 Mo. App. 23. It must be compulsory. *Adams v. Otterbeck*, 15 How. 539. And it must be established by clear and satisfactory evidence, so that parties in making a contract had reference to it. *Bowling v. Harrison*, 6 How. 248.

ROMBAUER, P. J.—This suit was instituted on May 19, 1889, by attachment before a justice of the peace. Defendant appeared to the action, and upon its retrial in the circuit court recovered judgment. From that judgment the plaintiff appeals, and assigns for error the court's ruling on the instructions. The sole question presented is whether the court, under the evidence, correctly declared the law applicable to the question of limitation, as the only substantial defense interposed was the statute of limitations of five years. The plaintiff's statement is in these words:

Plaintiff, for its cause of action, states as follows:

"Plaintiff is a corporation of the state of Missouri. At the times of the transactions hereinafter mentioned the defendant, Robert Dornan, was a partner with one John Dornan, now deceased, under the style of Dornan Brothers & Company, in the business of manufacturing carpets at the city of Philadelphia. Prior to May 4, 1886, plaintiff had sold and agreed to deliver to Christ Church, in the city of St. Louis, a carpet for the floor of said church, which was to be of good merchantable quality and free from grease left therein in process of manufacture, and to remain free from spots caused by such grease.

"To enable plaintiff to fulfill its said contract, defendant's said firm, having full knowledge of said contract, agreed and contracted with plaintiff to manufacture and sell and deliver to plaintiff a carpet to be laid in said church, which carpet, by the terms of defendant's said contract and by the mutual agreement and understanding then had between plaintiff and defendant, and by the usage and custom of the carpet trade, well known to defendant, was required to be free from grease left therein in process of manufacture, *and to remain free from spots and discoloration caused by such grease.*

"In pretended compliance with the contract last aforesaid, the defendant's said firm, prior to the fourth day of May, 1886, manufactured and sold and delivered to plaintiff, for the purpose aforesaid, a certain carpet, and did then, by agreement well and mutually understood between plaintiff and said firm, and by the uniform course of prior dealing for many years between plaintiff and said firm, and by the usage and custom of the carpet trade, well known to defendant and relied upon by plaintiff, *warrant plaintiff that said carpet would not, after being laid on said floor, develop or show spots or discoloration caused by grease left in said carpet in process of manufacture,* and did in like manner agree to indemnify plaintiff against loss and damage by reason of such spots or discoloration, should they occur; and plaintiff, relying upon such warranty and promise, did then pay defendant's said firm the full price of said carpet, to wit, $694.87.

"Thereafter, and about the tenth day of April, 1884, plaintiff laid said carpet upon the floor of said church, and thereafter for the first time spots and discolorations developed and appeared in said carpet, which spots and discolorations were caused by grease left therein by defendant's said firm in process of manufacture.

"Said spots and discolorations rendered said carpet unfit for the purpose for which defendant's said firm made and sold it to the plaintiff as aforesaid, and said carpet was worth $173.67 less than it would have been worth had said spots and discolorations not appeared, and plaintiff was thereby damaged in said sum and was compelled to pay, and did pay, said sum to said church on said fourth day of May, 1886.   Plaintiff demanded said sum of defendant on the fourth day of May, 1886, but to pay the same or any part thereof defendant has refused and still refuses.

" Wherefore plaintiff prays judgment for $173.67 with interest from the fourth of May, 1886, and costs."

The defendant filed a written plea before the justice, denying generally the facts set out in plaintiff's statement, and averring specially that plaintiff's cause of action, if any it had, accrued prior to March 1, 1884, and was barred by the statute of limitations of five years.

The evidence offered by plaintiff tended to show that it bought the carpet in question from defendant to be put down in place of another carpet which the defendant had prior thereto sold to the plaintiff, and which proved defective after it was put down.   The second carpet was sold and delivered to plaintiff in February, 1884, and was laid down in the church in the latter part of March or the beginning of April of the same year. Grease spots appeared in this carpet within two months after it was laid down.   The attention of the defendant's salesman was called to the fact, but not before the January succeeding.   In April, 1885, the plaintiff called the defendant's attention to the defect by letter, and made reclamation for the loss caused to it by the imperfection of the carpet.   Some correspondence was thereupon had between the plaintiff and defendant

attempting to adjust the loss, and, these negotiations failing, the plaintiff brought the present action.

All the testimony concedes that these grease spots are due to the imperfect scouring of the yarn, or the use of adulterated machine oil in the manufacture of the carpet, and that they can rarely, if ever, be discovered by inspection before the carpet has been laid down and exposed to dust. All the testimony likewise concedes that there is a custom or uniform usage as to the implication of a warranty in the sale of carpets by the manufacturer to the merchant, that the carpet is free from these grease defects. The testimony likewise tends to show that the uniform usage and practice in dealings between the manufacturer and merchants is to the effect *that, upon such grease spots appearing,* the manufacturer refunds to the merchant the loss caused to the latter, not exceeding the difference in value between what the carpet is, and what it ought to be, provided the attention of the manufacturer is called to the defect within a reasonable time after discovery of the defect. The defendant as a witness in his own behalf testified that it was his custom, when such imperfections exist in a carpet sold by him and are due to defects in manufacture, to make proper compensation to the merchant. There was also evidence tending to show that the plaintiff paid $173.67 to the church trustees in settlement of their claim against it for imperfections in the carpet, and that this was less than the difference in value between the value of this carpet free from grease defects and its value with such defects.

It will be thus seen that the evidence presented only two points for consideration: *First.* Was there by custom an implied warranty on part of defendant that the carpet sold would not, after being exposed to use, develop grease defects. *Secondly.* Did the statute of limitations begin to run in favor of the defendant from

the date of the sale and delivery of the carpet, or from the date of the development of such grease defects, followed by loss on plaintiff's part. If it began to run from the date of the sale, then the plaintiff's action is admittedly barred by limitation under the evidence; if from the date of the development of grease spots, it is not barred.

The plaintiff offered instructions embodying the second proposition above stated, as applied to the hypothetical facts developed by the evidence. These instructions the court refused. Upon the defendant's request the court gave the following instructions:

(*a*) "The court declares the law to be that the evidence in this case is not sufficient to establish a usage or custom whereby defendant was bound to make good to plaintiff any defects arising from defective manufacture of the carpet in question, manufactured and sold by defendant for and to plaintiff, first appearing after said carpet had been laid down on the floor.

(*b*) "Even though the court from the evidence believes that a custom or usage existed at the time of the sale of the carpet in question by defendant to plaintiff, whereby defendant is bound to make good to plaintiff any defects arising from the imperfect manufacture of the carpet in question, first arising after the same had been laid on the floor by plaintiff, the court, nevertheless, declares the law to be that such custom is not a valid one, and will not of itself entitle plaintiff to recover in this case against defendant.

(*c*) "The court declares the law to be that plaintiff's cause of action accrued prior to April 5, 1884, and that this action, having been commenced five years thereafter, is barred by limitation, and that defendant is entitled to judgment.

(*d*) "There is no evidence to show that defendant agreed with plaintiff that the carpet in controversy

would not develop grease spots after being laid upon the floor."

Instructions, a, b, and d are clearly incorrect. It is not apparent what the court meant by instruction a, since all the evidence concedes that manufacturers sell to merchants with implied warranty against defects arising from defective manufacture. That such defects in the usual course of trade can not be, and are never, discovered until the carpet is laid down is likewise conceded. The defendant himself admits his obligation, arising from the custom of trade, to make good any losses falling upon the merchant from such cause, but contends that he is not responsible because he did not receive timely notice of the defect after its discovery, even if the defect existed, which he denies. Nor do we conceive on what theory instruction b can be vindicated, since the custom mentioned is unquestionably reasonable, not prohibited by law, and according to defendant's own admission formed part of the contract between himself and his customers. The same applies to instruction d. It will be seen, however, that, although these instructions are erroneous, their being given was not prejudicial to plaintiff, if under the conceded facts the plaintiff's cause of action accrued prior to April 5, 1884. The only substantial question, therefore, is whether the court was justified in declaring, as a matter of law, that plaintiff's cause of action accrued prior to that date. It is self-evident that it was not warranted so to declare, unless the date of the sale and delivery *conclusively* establishes the date when the the statute begins to run.

The general rule unquestionably is that in all personal actions for the violation of an express or implied contract the statute begins to run from the date of the *wrong*, and not from the date of the *damages* caused by it. The wrong and not the damage constitutes the cause of action. Such has been the rule since an early day

(*Sheriff of Norwich v. Bradshaw*, 1 Croke Eliz. 53), and that distinction is emphasized is the leading case of *Wilcox v. Plummer*, 4 Pet. 177. An action for breach of an express warranty of title according to some of the cases, and of an implied warranty of title resulting from the vendor's possession, according to others, form an exception to the rule. *Gross v. Kierski*, 41 Cal. 112; *Case v. Hall*, 24 Wend. 102. This exception is put upon the ground that until the disturbance of the vendee's possession there is no *cause of action*, likening the case to a covenant of warranty in the sale of real estate. The rule, however, unquestionably is that in an action upon an express or implied warranty of *quality* the statute begins to run from the date of the sale, and not from the date of the discovery of the defect. The case of *Battley v. Faulkner*, 3 B. & Ald. 288, which so decides, has been uniformly recognized as authority in this country. Thus, in *Allen v. Todd*, 6 Lans. 222, it was held that, where the defendant sold to the plaintiff certain apple trees warranting them to be twenty ounce trees, and the trees when they began to bear did not bear twenty ounce apples, but apples of the most common kind, the cause of action accrued at the date of the sale, and the impossibility to discover the breach before the statute had barred the action did not change the rule. The court, however, was clear that, if the warranty had been that the trees would bear twenty ounce apples, the statute would not have commenced to run until the trees began to bear.

Applying the law as thus stated to the facts of this case, we must conclude that the peremptory instruction on the statute of limitation was not warranted. The plaintiff by his statement claims that the warranty was one that the carpet would not, after being laid on the floor, develop or show spots or discoloration caused by grease left in the carpet in process of manufacture. The

testimony seems to concede that, although some grease was left in the wool, yet, if it was not sufficient to show discoloration of the carpet upon exposure, there would have been no breach of the warranty. The breach of the warranty, according to some of the evidence, occurs upon the customer's well founded reclamation owing to the appearance of the spots. The plaintiff, therefore, was entitled to have this question submitted to the jury on a hypothetical instruction, since his right of recovery depended on the terms of the implied warranty.

The judgment is reversed and the cause remanded. All the judges concur.