11 N.Y.2d 409 (1962)
Citizens Utilities Company, Appellant,
v.
American Locomotive Company, Respondent.
Court of Appeals of the State of New York.
Argued May 15, 1962.
Decided July 6, 1962.
Cornelius W. Wickersham, Jr., Thomas J. Kiernan and Donald J. Miller for appellant.
William R. Meagher, Frederick A. O. Schwarz and Donald T. Fox for respondent.
Opinion by Chief Judge DESMOND in which Judges DYE and VAN VOORHIS concur; Judge FROESSEL concurs in a separate opinion in which Chief Judge DESMOND and Judges DYE and VAN VOORHIS concur; Judge FULD dissents in part and votes to reverse so much of the judgment as dismisses the ninth cause of action in an opinion in which Judges BURKE and FOSTER concur.
*412 Chief Judge DESMOND.
As this appeal comes to us we must determine the correctness of decisions below which dismissed on the pleadings causes of action numbered 1, 2, 4, 7 and 8 and granted summary judgment in favor of defendant on a Statute of Limitations ground as to cause of action numbered 9. All of these counts except number 9 derive from the manufacture and sale by defendant for and to plaintiff under a 1948 contract for a price of $292,480 of four generating sets for plaintiff's electric generating plant in Nogales, Arizona. The ninth cause of action is alleged as having arisen out of a similar manufacture and sale at a price of $254,356 of four generating units for use at plaintiff's plant at Newport, Vermont.
Leaving the ninth (Newport) count until later, we will deal first with the Nogales causes of action. The Nogales contract was made in September, 1948 through the acceptance by plaintiff of defendant's written proposal containing this language:
"The rating of this equipment at an elevation of 4000 feet will be 1200 H. P., 842 KW. We believe, however, that the units equipped in accordance with the proposal specifications will be capable of delivering continuously 1287 H. P., 900 KW at 4000 feet elevation above sea *413 level with a short time rating of 10% additional capacity for two hours continuous out of every twenty-four but cannot guarantee such performance at this time due to insufficient actual experience."
It is not contended that the above warranties were breached but it is alleged that in selling this equipment defendant, by oral representations and impliedly, warranted that the generating sets would be capable of continuous operation at full capacity for a normal machine life span of 30 years or more and that they would be suitable and dependable for plaintiff's purposes and would meet the requirements of plaintiff's Nogales plant. However, as both courts below held, plaintiff is met by an impassable obstacle in the form of a settlement agreement concluded in May, 1950 between the parties. The Nogales sets were installed and began operating in June, 1949 and soon afterward disputes arose as to their performance. In November, 1949 Citizens sued American in the United States District Court for the Southern District of New York for damages alleging that the Nogales sets were unmerchantable and defective, that they did not correspond to the description by which they were sold and purchased, that there were various listed defects, and, specifically, that they were incapable of generating more than 3,200 KW together or 800 KW apiece. While the Federal court action was pending negotiations arose for an adjustment of the dispute and each party appointed two engineers to conduct joint operating tests. The four engineers went to Nogales in early 1950 and later made a joint report to the parties in which they described comprehensive tests and reported generally that the engines were producing up to the levels stated in the contract. Based on this report and with the report attached and made part thereof, a settlement agreement was made and the Federal court action discontinued. The settlement agreement recited the sale and installation of the Nogales equipment and that disputes had arisen and that the engineers for the parties had made a joint report. It was stipulated as fact that each of the sets had a capacity for continuing operation of 842 KW plus an overload for two hours a day and that such capacity had been demonstrated by the tests described in the annexed engineers' report and had been satisfactorily proven by ordinary operation. The treaty contained a flat statement *414 that plaintiff "accepts" the performance of the sets as to KW capacity, fuel consumption and lubrication and as to all other characteristics and specifications set forth in the report and that plaintiff "waives" all past, present or future claims for damages for delay in delivery or installation and damages for any failure of defendant to meet any obligation with respect to the generating sets or as related to any reliance by plaintiff on any information or representations made by defendant. There is another statement in the agreement that plaintiff "accepts" the generating sets as having been constructed according to the contract specifications. Plaintiff was granted a credit for about $5,000 for some work which plaintiff had done on the sets and was granted a further credit of $42,500 to be applied against a balance still owing on the four sets.
The May, 1950 agreement just above summarized not only appears on its face to be a complete settlement, entered into after investigation and report by experts by both sides of all conceivable complaints about these generating sets, but it goes further than that and says that the present plaintiff "accepts" the sets as meeting certain prescribed standards of efficiency and performance. Even beyond that, plaintiff not only discontinued a suit which it had brought for damages for these alleged defects but accepted a substantial reduction in price to cover any deficiency in the sets. If this agreement were not so sweeping in terms and if it did not involve an acceptance of the sets as they were found to be and to operate, some cause of action might possibly have survived. But if this agreement was not intended to prevent any future claim of any kind then such a result could not be obtained by the use of language. Plaintiff does plead that at the time of the tests defendant falsely and fraudulently represented that the equipment would last for 30 years, etc. But any survival of such a claim would be entirely inconsistent with the language and purpose of the agreement whereby plaintiff "accepts" the generators after elaborate tests and in consideration of a large reduction in price.
What plaintiff is really arguing as to the Nogales causes of action is that an alleged implied warranty of suitability for 30 years of operation was breached long after the making of the 1950 agreement because, according to plaintiff, the unsuitability of these sets purchased for 30 years of operation did not and *415 could not become apparent by 1950. The first answer is that by the 1950 agreement plaintiff, after a report by its own engineers, accepted the sets at a reduced price. Such an arrangement simply makes no sense unless it was intended to terminate controversies forever. There is another answer, also. The settlement agreement itself waives all past, present or future claims for failure of attainment of expected performance or for any failure of defendant to meet any of its obligations with respect to the sets or because of any reliance by plaintiff on information furnished or representations made concerning the characteristics of the sets. Plaintiff cites a line of cases such as Woodworth v. Rice Bros. Co. (193 App. Div. 971, affd. 233 N.Y. 577) to the effect that certain warranties will be read as guaranteeing that certain facts will occur in the future. The Woodworth case involved a sale of peach trees and an agreement that, when these trees should begin to bear, the peaches would be of certain varieties, which turned out to be untrue. Such cases have no relevance to ours. The characteristics and operating ability of these generating sets were presently existing facts at the time of installation. When a substantial period of operation raised a doubt or dispute as to whether the sets had the characteristics expressly or impliedly warranted, the parties had a joint test made. The representatives jointly examined into the true present facts as to the characteristics and made a settlement accordingly.
For reasons similar to those just above given there is no need here to make an analysis in depth as to the effect of "no-warranty" and "no-reliance" clauses in contracts (see Danann Realty Corp. v. Harris, 5 N Y 2d 317, and Crowell-Collier Pub. Co. v. Josefowitz, 5 N Y 2d 998).
The discussion just concluded disposes of all the causes of action except number 9 which, as we have said, arose out of the sale by defendant to plaintiff of four generating sets for use at Newport, Vermont. The pleading of this cause of action describes the Newport sale and installation, recites warranties expressed in the agreement and alleges implied warranties of suitability for plaintiff's purposes and of capability for continuous operation. Suit for alleged breach was not begun until February 14, 1955, when the ninth cause of action was for the first time asserted in an amended complaint. Concededly, this *416 date was more than six years after the delivery and installation at Newport. Accordingly, the courts below held that the ninth cause of action was barred by the six-year Statute of Limitations (Civ. Prac. Act, § 48, subd. 1). Justice RABIN, dissenting in the Appellate Division, was of the opinion that there was a question of fact as to when the period of limitation would start to run since, as he saw it, at least one of the implied warranties was such that its breach might not be discoverable for a long time  that is, the alleged implied warranty that the sets would be good for continuous operation for 30 years. He, of course, agreed to the general rule that a cause of action for a breach of warranty accrues at the time of sale and not afterward and is barred six years after the sale. However, the dissenting Justice, citing Woodworth v. Rice Bros. Co. (233 N.Y. 577, supra), wrote that when a warranty refers to a performance at some far future time the general rule as to the beginning point for the Statute of Limitations should not apply. But such a holding would be a change in a settled New York rule which goes back beyond Allen v. Todd (6 Lans. 222 [1872], another fruit tree case) and is to the effect that where the warranty is as to kind, characteristics, suitability, etc., of the sold article the limitation runs from the date of sale and present inability to ascertain quality or condition is irrelevant. Such is the New York law as to the accrual of a cause of action for implied warranty (Blessington v. McCrory Stores Corp., 305 N.Y. 140, 147; Kakargo v. Grange Silo Co., 11 A D 2d 796, motion for leave to app. den. 8 N Y 2d 711).
Plaintiff, it is fair to say, does not dispute the standard rule of law just above set forth. This, says plaintiff, is a different sort of case where the alleged implied warranty was not only as to present suitability but that the sets "would be and would continue to be capable of continuous operation at full rated capacity for a full normal machine life span of at least 30 years" (amended complaint). A close inspection of this pleading makes it clear that what plaintiff is alleging is: first, that defendant expressly represented that the sets were so designed and constructed that with normal operation they would last 30 years, and, second, that there was an implied warranty that the sets would be capable of continuous operation at full rated capacity for the usual life span of 30 years. In other words, *417 even according to the complaint defendant never warranted that these machines would still be operating after 30 years. Plaintiff wishes the courts to imply, from what was said, a warranty that they would still be in existence and running full tilt at the end of and after 30 years. A warranty express or implied that a machine is so built that it should last 30 years is a warranty of present characteristics, design and condition and should not be stretched by implication into a specific promise enforcible at the end of 30 years. As Williston on Sales (rev. ed., Vol. 1, p. 549, n. 5) explains, "a representation that a machine will work well for five years is a representation as to its present condition in effect. The representation means that the machine as it stands is so well constructed as to be capable of enduring use for that period". As to Southern Cal. Enterprises v. Walter & Co. (78 Cal. App. 2d 750 [an express warranty]), that decision announces a rule contrary to the one always accepted and applied in New York (see Justice SHIENTAG'S able opinion in Liberty Mut. Ins. Co. v. Shelia-Lynn, Inc., 185 Misc. 689, 692 et seq., affd. 270 App. Div. 835). There is, of course, an element of unfairness in requiring a purchaser to sue within six years after purchase to enforce an agreement that the article which is the subject of the sale will last for 30 years. But this is the same kind of "unfairness" that may result from almost any Statute of Limitations. Indeed it results from the fundamental New York theory of limitations as expressed in article 2 of the Civil Practice Act which makes all limitations except a particular specified one run from breach and not from discovery. Probably this complaint does not really raise the question since as pointed out above plaintiff does not allege that in these elaborate contracts involving large sums of money defendant in terms promised in writing or orally that the machines would work well for 30 years. The most that plaintiff is willing to assert is that such a promise should be implied from what was actually said.
The judgment should be affirmed, with costs.
FROESSEL, J. (concurring).
We concur with Chief Judge DESMOND for affirmance, but as to the ninth cause of action would place our affirmance upon the ground that plaintiff expressly agreed that the defendant "shall have no liability upon warranties express or implied with respect to workmanship *418 or material other than as [in the contract] provided"; and further agreed that "the contract as so accepted and approved shall become in all respects the sole agreement between the parties with respect to the machinery forming the subject matter thereof. All previous communications between the parties, either verbal or written, shall thereupon be deemed abrogated and withdrawn. No modification or assignment hereof shall be binding upon the parties or either of them unless in writing similarly approved".
FULD, J. (dissenting in part).
Concluding as I do that the Statute of Limitations does not bar suit, upon the lapse of six years from the date of the sale, on the ninth cause of action  which relies on a warranty that the generating sets had a life span of 30 years and would continue to operate for that length of time  I would reverse so much of the judgment as dismisses that count.
In the ninth cause of action, the plaintiff alleges that, in connection with its purchase of generating sets from the defendant in 1946, the defendant "expressly represented" that those sets
"were capable of continuous operation * * * [for] at least 30 years"
and, in addition, "impliedly warranted" that they
"would be and would continue to be capable of continuous operation at full rated capacity for a full normal machine life of at least 30 years".
Then, after reciting that the sets worked well for six and a half years, the complaint goes on to declare that they then "ceased to be suitable and dependable * * * and failed to have a full normal machine life span of at least 30 years when operated continuously at full rated capacity." And, the complaint continues, the defects and deficiencies in the sets were not ascertainable upon inspection or test and were, on the contrary, "discoverable only after several years of operation" and were not discovered until August of 1954.
The defendant interposed, as a separate defense, the six-year Statute of Limitations (Civ. Prac. Act, § 48, subd. 1), urging that the warranty  that the sets had a 30-year life  was breached at the latest when the goods were delivered to the plaintiff for its use and that, since the machinery was put in *419 operation in December of 1948, the action was barred when it was commenced more than six years later, in February, 1955. The courts below, accepting the defendant's argument, granted summary judgment dismissing the cause of action.
If, as the plaintiff alleges, there was a warranty that the machinery had a life of 30 years  or, indeed, any period in excess of six years  a holding that the statute begins to run from the date of sale has the necessary effect of reducing that warranty to six years, the period of limitations. I see no reason or warrant for so unreasonable and unjust a result.
As Williston observes, although a representation that "a machine will work well for five years is a representation as to its present condition * * * [it] carries with it also perhaps an implied promise" (1 Williston, Sales [rev. ed., 1948], § 212, p. 549, n. 5). And, then, addressing himself to the subject which concerns us, the Statute of Limitations, Williston goes on to differentiate between the typical warranty of quality and one which is prospective in character. Thus, he writes, while "The typical warranty" of quality relating to the quality of goods at the time of sale is broken, if ever, at that time, "On the other hand, if the seller promises that something shall happen or shall not happen to the goods within a specified future time, the promise though it may be called a warranty cannot be broken until that time has elapsed and until then the statute will not begin to run" (1 Williston, Sales, op. cit., § 212a, p. 550).
In the case before us, the warranties alleged in the complaint, both the express warranty  that the generating sets were capable of continuous operation for at least 30 years  and the implied warranty  that they "would be and would continue to be capable of continuous operation * * * for * * * at least 30 years"  relate to more than a present condition, i.e., a condition of suitability and operability at the time of sale. They are necessarily prospective in nature, looking toward the future and, since this is so, the warranties would not be breached until the machinery failed to function or gave evidence of not operating properly, and until that time the Statute of Limitations would not begin to run. (See, e.g., Woodworth v. Rice Bros. Co., 110 Misc. 158, affd. 193 App. Div. 971, affd. 233 N.Y. 577; John Sills & Sons v. Bridgeton Condensed Milk Co., 43 F.2d 72; *420 Aced v. Hobbs-Sesack Plumbing Co., 55 Cal. 2d 573, 583 et seq.; Southern Cal. Enterprises v. Walter & Co., 78 Cal. App. 2d 750; Cole v. Zellan, 55 A. 2d 516 [D. C.], affd. 183 F.2d 139; Kennard & Sons Carpet Co. v. Dornan, 64 Mo. App. 17, 25; Heath v. Moncrief Furnace Co., 200 N. C. 377; Cunningham v. Frontier Lbr. Co., 245 S. W. 270 [Texas]; Ingalls v. Angell, 76 Wash. 692.)
The California case of Southern Cal. Enterprises v. Walter & Co. (78 Cal. App. 2d 750, supra) is illustrative. There, the defendant sold the plaintiff a carpet, representing and warranting that it would "last for a period of six to eight years following its installation". The carpet was installed in September of 1943. It opened at its seams in January, 1944, and became so frayed and ragged that it constituted a hazard to plaintiff's customers from that time on. The applicable Statute of Limitations was two years. The plaintiff commenced his action for breach of warranty in December, 1945, more than two years after the purchase, but less than two years after the appearance of the defects about which complaint was made. Concluding that the warranty was "prospective", looking toward the future, rather than "present", the court decided that the suit was not barred. "To adopt the theory advanced by respondent and accepted by the trial court relative to the purpose of the statute of limitations", declared the court, "would be to ordain the statute as an instrument for the protection of fraud instead of for its prevention. * * * If it should be held that the statute began to run at the date of the sale of the carpet and not when it had been ascertained and established as a fact that the warranty had been breached, not only would appellant be deprived of its right to present its cause of action on the merits but respondent would be invited to continue the making of similar warranties to others secure in the knowledge that it would not be required to answer in damages for their breach. * * * The cause of action is on a warranty of a future happening and it did not arise and the statute of limitations did not begin to run at the date of sale but was postponed until the future event failed to materialize" (78 Cal. App. 2d, at pp. 752, 754).
The written contract entered into between the parties contains no reference to a representation or a warranty that the *421 generating sets will endure and function properly for 30 years and, particularly since it contains a so-called merger clause, application of the parol evidence rule undoubtedly prevents the plaintiff from proving an express representation or warranty. (See Bennett v. Piscitello, 259 App. Div. 964, affd. 285 N.Y. 584; Bareham & McFarland v. Kane, 228 App. Div. 396, 401.) However, the complaint seeks damages, also, for breach of implied warranty  that the machinery would be capable of continuous operation for 30 years  and, in my view, the plaintiff is entitled to prove upon a trial that, by virtue of trade usage and custom (Personal Property Law, § 96, subd. 5), generating sets of the sort sold by the defendant to the plaintiff, costing about $250,000, are not deemed of "merchantable quality" or "reasonably fit" for the purpose for which they were sold (Personal Property Law, § 96, subds. 1, 2) unless they have a life span of 30 years and will operate for that period. The plaintiff may not, of course, be able to show that the understanding was that the machinery was to have a 30-year life, but certainly it stands to reason that such machinery was sold with the idea that it would function, at the very least, for a period beyond a year or two or three and that there was an implied warranty that it would operate for a "reasonable" time. (See Aced v. Hobbs-Sesack Plumbing Co., 55 Cal. 2d 573, 584, supra; Mars v. Herman, 37 A. 2d 351, 354 [D. C.]; Milcor Steel Co. v. Grantier, 34 Misc 2d 496.) Such a warranty, as I have already stated, is prospective in nature and should not be deemed breached until the machinery failed to operate properly, and until that time the Statute of Limitations would not begin to run. (See cases cited, supra, pp. 419-420.)
It is true that most of the cases in which warranties have been held to be prospective in nature have involved express warranties. (See 2 Frumer & Friedman, Products Liability, § 40.01 [2], p. 513.) But no basis exists for treating implied warranties any differently from those which are express when they relate to, or are contingent upon, a future event, and courts in other jurisdictions have so held. (See, e.g., Aced v. Hobbs-Sesack Plumbing Co., 55 Cal. 2d 573, 584, supra; Kennard & Sons Carpet Co. v. Dornan, 64 Mo. App. 17, 25, supra.) Indeed, the court, faced in the Aced case with a question very like the one now before us, reached the conclusion for which I speak. The *422 defendant Aced contracted with plaintiff owners to build a home with a radiant heating system installed in a concrete slab floor. A subcontractor, Hobbs, agreed with Aced to furnish the necessary labor and material for the system and the installation was completed in 1953. Numerous leaks developed in the tubing and in 1955 the entire system had to be replaced. The plaintiffs thereupon brought an action against Aced for damages, and some time later he filed a cross complaint against Hobbs, alleging that Hobbs had breached the implied warranty of merchantability. The applicable period of limitations was four years. The third-party complaint was served more than four years after the installation of the heating system, but within four years of the discovery of the defects. In holding that that complaint was not barred by the Statute of Limitations, the California Supreme Court wrote (55 Cal. 2d, at pp. 583-584):
"We are satisfied * * * that this is a case which could properly be found to come within the operation of the principle that, if a warranty relates to a future event before which the defect cannot be discovered by the exercise of reasonable diligence, the warranty, though accompanied by a representation as to the present condition, is prospective in character and the statute of limitations begins to run as of the time of that event. This principle, while not always stated in identical language, has been applied in a variety of factual situations. * * * the principle in question has been followed with respect to implied as well as express warranties, and it has long been recognized in this state that the time when the statute of limitations begins to run is the same whether a warranty is express or implied."
And the court then went on to note that "A warranty that the tubing was of a quality reasonably permitting its use in a radiant heating system would include a prospective warranty that the tubing would not, within a reasonable period of time, corrode and leak. It obviously could be determined that a reasonable time had not expired when the leaks were first noticed about a year after the heating system had been installed" (p. 584).
*423 So, in the present case, it "obviously could be determined"  whether or not the plaintiff will be able to prove that, by trade usage and custom, generating sets are sold to operate for 30 years  that "a reasonable time had not expired" when, according to the complaint, the machinery first began to malfunction.
Concerning the point made in Judge FROESSEL'S concurring opinion, that the defendant could not rely upon the implied warranty asserted because of the merger and no modification clause of the contract or its further provision that the defendant seller was not to be liable "upon warranties express or implied with respect to workmanship or material other than as here provided", I would merely say that neither the one nor the other encompasses or bars proof of the warranty of merchantability or of fitness implied by the Sales Act. (Cf. Stryker v. Rusch, 8 A D 2d 244, 246; Henningsen v. Bloomfield Motors, 32 N. J. 358, 378; Knapp v. Willys-Ardmore, Inc., 174 Pa. Super. Ct. 90.) It is entirely conceivable that, even if there was nothing wrong with the workmanship or the material that went into the generators, they would still not be merchantable qua generators or fit for the particular purpose for which they were sold.
Judgment affirmed.