Fuld, J. (dissenting in part).
Concluding as I do that the Statute of Limitations does not bar suit, upon the lapse of six years from the date of the sale, on the ninth cause of action — which relies on a warranty that the generating sets had a life span of 30 years and would continue to operate for that length of time—I would reverse so much of the judgment as dismisses that count.
In the ninth cause of action, the plaintiff alleges that, in connection with its purchase of generating sets from the defendant in 1946, the defendant “ expressly represented ” that those sets ‘ ‘ were capable of continuous operation * * * [for] at least 30 years ’ ’ and, in addition, ‘ ‘ impliedly warranted ’ ’ that they “ would be and would continue to be capable of continuous operation at full rated capacity for a full normal machine life of at least 30 years ’ ’. Then, after reciting that the sets worked well for six and a half years, the complaint goes on to declare that they then “ ceased to be suitable and dependable * * * and failed to have a full normal machine life span of at least 30 years when operated continuously at full rated capacity.” And, the complaint continues, the defects and deficiencies in the sets were not ascertainable upon inspection or test and were, on the contrary, “ discoverable only after several years of operation ” and were not discovered until August of 1954.
The defendant interposed, as a separate defense, the six-year Statute of Limitations (Civ. Prac. Act, § 48, subd. 1), urging that the warranty — that the sets had a 30-year life — was breached at the latest when the goods were delivered to the plaintiff for its use and that, since the machinery was put in *419 operation in December of 1948, the action was barred when it was commenced more than six years later, in February, 1955. The courts below, accepting the defendant’s argument, granted summary judgment dismissing the cause of action.
If, as the plaintiff alleges, there was a warranty that the machinery had a life of 30 years — or, indeed, any period in excess of six years — a holding that the statute begins to run from the date of sale has the necessary effect of reducing that warranty to six years, the period of limitations. I see no reason or warrant for so unreasonable and unjust a result.
As Williston observes, although a representation that ‘ ‘ a machine will work well for five years is a representation as to its present condition * * * [it] carries with it also perhaps an implied promise ” (1 Williston, Sales [rev. ed., 1948], § 212, p. 549, n. 5). And, then, addressing himself to the subject which concerns us, the Statute of Limitations, Williston goes on to differentiate between the typical warranty of quality and one which is prospective in character. Thus, he writes, while “ The typical warranty ” of quality relating to the quality of goods at the time of sale is broken, if ever, at that time, ‘1 On the other hand, if the seller promises that something shall happen or shall not happen to the goods within a specified future time, the promise though it may be called a warranty cannot be broken until that time has elapsed and until then the statute will not begin to run ” (1 Williston, Sales, op. cit., § 212a, p. 550).
In the case before us, the warranties alleged in the complaint, both the express warranty—that the generating sets were capable of continuous operation for at least 30 years — and the implied warranty—that they “ would be and would continue to be capable of continuous operation * * * for * * * at least 30 years ”—relate to more than a present condition, i.e., a condition of suitability and operability at the time of sale. They are necessarily prospective in nature, looking toward the future and, since this is so, the warranties would not be breached until the machinery failed to function or gave evidence of not operating properly, and until that time the Statute of Limitations would not begin to run. (See, e.g., Woodworth v. Rice Bros. Co., 110 Misc. 158, affd. 193 App. Div. 971, affd. 233 N. Y. 577; John Sills & Sons v. Bridgeton Condensed Milk Co., 43 F. *420 2d 72; Aced v. Hobbs-Sesack Plumbing Co., 55 Cal. 2d 573, 583 et seq.; Southern Cal. Enterprises v. Walter & Co., 78 Cal. App. 2d 750; Cole v. Zellan, 55 A. 2d 516 [D. C.], affd. 183 F. 2d 139; Kennard & Sons Carpet Co. v. Dornan, 64 Mo. App. 17, 25; Heath v. Moncrief Furnace Co., 200 N. C. 377; Cunningham v. Frontier Lbr. Co., 245 S. W. 270 [Texas]; Ingalls v. Angell, 76 Wash. 692.)
The California case of Southern Cal. Enterprises v. Walter é Co. (78 Cal. App. 2d 750, supra) is illustrative. There, the defendant sold the plaintiff a carpet, representing and warranting that it would ‘ ‘ last for a period of six to eight years following its installation ’ ’. The carpet was installed in September of 1943. It opened at its seams in January, 1944, and became so frayed and ragged that it constituted a hazard to plaintiff’s customers from that time on. The applicable Statute of Limitations was two years. The plaintiff commenced his action for breach of warranty in December, 1945, more than two years after the purchase, but less than two years after the appearance of the defects about which complaint was made. Concluding that the warranty was “ prospective ”, looking toward the future, rather than “ present ”, the court decided that the suit was not barred. “ To adopt the theory advanced by respondent and accepted by the trial court relative to the purpose of the statute of limitations ”, declared the court, “would be to ordain the statute as an instrument for the protection of fraud instead of for its prevention. * * * If it should be held that the statute began to run at the date of the sale of the carpet and not when it had been ascertained and established as a fact that the warranty had been breached, not only would appellant be deprived of its right to present its cause of action on the merits but respondent would be invited to continue the making of similar warranties to others secure in the knowledge that it would not be required to answer in damages for their breach. * * * The cause of action is on a warranty of a future happening and it did not arise and the statute of limitations did not begin to run at the date of sale but was postponed until the future event failed to materialize ” (78 Cal. App. 2d, at pp. 752, 754).
The written contract entered into between the parties contains no reference to a representation or a warranty that the *421 generating sets will endure and function properly for 30 years and, particularly since it contains a so-called merger clause, application of the parol evidence rule undoubtedly prevents the plaintiff from proving an express representation or warranty. (See Bennett v. Piscitello, 259 App. Div. 964, affd. 285 N. Y. 584; Bareham & McFarland v. Kane, 228 App. Div. 396, 401.) However, the complaint seeks damages, also, for breach of implied warranty—that the machinery would be capable of continuous operation for 30 years — and, in my view, the plaintiff is entitled to prove upon a trial that, by virtue of trade usage and custom (Personal Property Law, § 96, subd. 5), generating sets of the sort sold by the defendant to the plaintiff, costing about $250,000, are not deemed of ‘ ‘ merchantable quality ” or “ reasonably fit ” for the purpose for which they were sold (Personal Property Law, § 96, subds. 1, 2) unless they have a life span of 30 years and will operate for that period. The plaintiff may not, of course, be able to show that the understanding was that the machinery was to have a 30-year life, but certainly it stands to reason that such machinery was sold with the idea that it would function, at the very least, for a period beyond a year or two or three and that there was an implied warranty that it would operate for a “ reasonable ” time. (See Aced v. Hobbs-Sesack Plumbing Co., 55 Cal. 2d 573, 584, supra; Mars v. Herman, 37 A. 2d 351, 354 [D. C.]; Milcor Steel Co. v. Grantier, 34 Misc 2d 496.) Such a warranty, as I have already stated, is prospective in nature and should not be deemed breached until the machinery failed to operate properly, and until that time the Statute of Limitations would not begin to run. (See cases cited, supra, pp. 419-420.)
It is true that most of the cases in which warranties have been held to be prospective in nature have involved express warranties. (See 2 Prumer & Friedman, Products Liability, § 40.01 [2], p. 513.) But no basis exists for treating implied warranties any differently from those which are express when they relate to, or are contingent upon, a future event, and courts in other jurisdictions have so held. (See, e.g., Aced v. Hobbs-Sesack Plumbing Co., 55 Cal. 2d 573, 584, supra; Kennard & Sons Carpet Co. v. Dornan, 64 Mo. App. 17, 25, supra.) Indeed, the court, faced in the Aced case with a question very like the one now before us, reached the conclusion for which I speak. The *422 defendant Aced contracted with plaintiff owners to build a home with a radiant heating system installed in a concrete slab floor. A subcontractor, Hobbs, agreed with Aced to furnish the necessary labor and material for the system and the installation was completed in 1953. Numerous leaks developed in the tubing and in 1955 the entire system had to be replaced. The plaintiffs thereupon brought an action against Aced for damages, and some time later he filed a cross complaint against Hobbs, alleging that Hobbs had breached the implied warranty of merchantability. The applicable period of limitations was four years. The third-party complaint was served more than four years after the installation of the heating system, but within four years of the discovery of the defects. In holding that that complaint was not barred by the Statute of Limitations, the California Supreme Court wrote (55 Cal. 2d, at pp. 583-584):
“ We are satisfied * * * that this is a case which could properly be found to come within the operation of the principle that, if a warranty relates to a future event before which the defect cannot be discovered by the exercise of reasonable diligence, the warranty, though accompanied by a representation as to the present condition, is prospective in character and the statute of limitations begins to run as of the time of that event. This principle, while not always stated in identical language, has been applied in a variety of factual situations. * * * the principle in question has been followed with respect to implied as well as express warranties, and it has long been recognized in this state that the time when the statute of limitations begins to run is the same whether a warranty is express or implied. ’ ’
And the court then went on to note that 11 A warranty that the tubing was of a quality reasonably permitting its use in a radiant heating system would include a prospective warranty that the tubing would not, within a reasonable period of time, corrode and leak. It obviously could be determined that a reasonable time had not expired when the leaks were first noticed about a year after the heating system had been installed ” (p. 584).
*423 So, in the present case, it u obviously could be determined ”— whether or not the plaintiff will be able to prove that, by trade usage and custom, generating sets are sold to operate for 30 years — that “ a reasonable time had not expired ” when, according to the complaint, the machinery first began to malfunction.
Concerning the point made in Judge Feoessel’s concurring opinion, that the defendant could not rely upon the implied warranty asserted because of the merger and no modification clause of the contract or its further provision that the defendant seller was not to be liable “ upon warranties express or implied with respect to workmanship or material other than as here provided ”, I would merely say that neither the one nor the other encompasses or bars proof of the warranty of merchantability or of fitness implied by the Sales Act. (Cf. Stryker v. Rusch, 8 AD 2d 244, 246; Henningsen v. Bloomfield Motors, 32 N. J. 358, 378; Knapp v. Willys-Ardmore, Inc., 174 Pa. Super. Ct. 90.) It is entirely conceivable that, even if there was nothing wrong with the workmanship or the material that went into the generators, they would still not be merchantable qua generators or fit for the particular purpose for which they were sold.
Opinion by Chief Judge Desmond in which Judges Dye and Van Voobhis concur; Judge Fboessel concurs in a separate opinion in which Chief Judge Desmond and Judges Dye and Van Voobhis concur; Judge Fuld dissents in part and votes to reverse so much of the judgment as dismisses the ninth cause of action in an opinion in which Judges Bubke and Foster concur.
Judgment affirmed.